**EMPLOYERS LIABILITY ASSURANCE CORP., Ltd., and the City of Juneau, Alaska, Appellants,**

v.

**Ruth Ann DULL and the Alaska Workmen's Compensation Board, consisting of Joe Kirkbride, Tom Chandler and Lewis M. Dischner, Appellees.**

No. 663.

Supreme Court of Alaska.

July 14, 1966.

R. J. Annis of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellants.

R. Boochever of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

The superior court affirmed an order of the Alaska Workmen's Compensation Board which awarded appellee, Ruth Ann Dull, compensation because of the accidental death of her husband, Donald Dull. On this appeal the principal question presented is whether Dull's death arose out of and in the course of his employment with the appellant, City of Juneau.[1]

Dull was employed by the City of Juneau as a police inspector. While on duty on October 18, 1964, he engaged in the practice of "quick draw" with a fellow police officer, Eugene Coombs. This practice consisted of the two men, while facing each other, rapidly drawing and firing unloaded pistols to see who could draw and fire the faster.

At the conclusion of this practice the two men loaded their pistols and holstered them and Coombs left Dull's office. Almost immediately, Coombs returned to the office and attempted to test Dull's

---

1. Under the Alaska Workmen's Compensation Law, compensation is payable for "accidental * * * death arising out of and in the course of employment * * *." AS 23.30.265(13).

reflexes by diverting Dull's attention and then pretending to draw his pistol—a practice known as the "fake draw". Coombs then turned to leave and as he was walking out of the office Dull called "Gene, look at this." Turning Coombs saw Dull make a motion as if to draw his pistol—the same fake draw practice. The next thing Coombs recalled was that he had drawn his gun and fired it. Dull was struck in the left temple by the bullet and died about four hours later.

■ Appellant contends that Dull and Coombs had been engaged in horseplay, that Dull was the instigator of the horseplay that led to his death, and that under the rule of the majority of courts Dull's death was not compensable because as the instigator of horseplay he had deviated from, and his death therefore did not arise in the course of his employment.[2]

This was not a horseplay situation.[3] The chief of police testified that the practice of actually drawing unloaded weapons while one police officer faced another was frowned upon by the police department. But he also testified that quick reflexes are a desirable quality in a police officer, that officers customarily engaged in dry firing and fake drawing, and that no regulations promulgated by the Juneau Police Department prohibited such activities. At the time Dull was shot he was not engaged in the quick draw practice which he had been a short time earlier. Instead, Dull was engaged in the fake draw practice which did not involve the actual

drawing of his pistol. As the evidence showed, this was a customary practice and not prohibited. The evidence supports the Board's finding that the actual quick drawing practice had been concluded and that Dull's death arose from the customary and accepted practice of fake drawing.

In his capacity as a police inspector Dull was required to associate with fellow police officers who, while on duty, carried loaded pistols. Because of the propensity and customary practice of police officers in the City of Juneau to test their reflexes by fake draws of their weapons, and because of imperfections in human nature that might lead, as it did here, to a moment of carelessness where an officer would actually draw and fire a loaded pistol, there was involved in Dull's association with other officers the risk of injury or death resulting from the careless use of pistols.[4] Dull was killed, not merely while he was associated with other police officers, but because of such association. The risk of such association was a risk of Dull's employment, and thus his death was connected with an incident of his employment and was compensable.[5]

■ The Workmen's Compensation Board awarded appellee, Ruth Ann Dull, compensation in the amount of 35 per cent of her deceased husband's average weekly wages, together with additional benefits in the amount of 15 per cent of such wages for appellee's child by a previous marriage, Sherry L. Gregg. Appellants contend that the award of benefits for the

2. At the time appellant's brief was prepared the then current edition of Larson on Workmen's Compensation stated that the present majority rule was that compensation was denied to the aggressor or instigator in horseplay situations. Larson, Workmen's Compensation § 23.20, at 345 (1952). In his 1965 edition, Professor Larson no longer refers to that rule as "the present majority rule." 1 Larson, Workmen's Compensation § 23.20, at 382 (1965).

3. Horseplay is defined by Webster as "rude, boisterous play." Webster, New Inter-

national Dictionary 1203 (2d ed. unabr. 1960).

4. Hartford Acc. & Indem. Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 14–15, cert. denied, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940).

5. Northern Corp. v. Saari, 409 P.2d 845, 846 (Alaska 1966); Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 552 (1920); Stroud v. Industrial Comm., 2 Utah 2d 270, 272 P. 2d 187, 190 (1954).

child was not justified because the child's natural father was obliged to and did contribute to the child's support at the rate of $100 a month, and therefore the child did not qualify as a dependent of her stepfather, Donald Dull.

AS 23.30.215(a) (2) provides for the award of compensation known as a death benefit as follows:

> (2) if there is a surviving wife or dependent husband and no child of the deceased, to the surviving wife or dependent husband 35 per cent of the average wages of the deceased, during widowhood, or dependent widowerhood with two years' compensation in one sum upon remarriage; if there is a surviving child or children of the deceased, the additional amount of 15 per cent of the average wages for each child * * *.

AS 23.30.265(4) defines "child" as including "a stepchild * * * dependent upon the deceased, but does not include married children unless wholly dependent on him."

Sherry Gregg was Dull's stepchild. The question is whether she was "dependent upon" Dull within the meaning of the statute. The Board found that she was, and we hold that such finding is supported by substantial evidence. The record shows that the child had been living with her mother and Dull for approximately four and one-half months prior to Dull's death, that the monthly expenses for baby sitting and for food and clothes and medical care for the child, to which Dull had contributed, were about $185 a month and that the monthly payment on the house in which the family lived was $201 which did not include heat and utilities. From this evidence the Board was justified in finding that Sherry Gregg had been dependent upon her stepfather, for the child was unquestionably deprived of a source of support by reason of her stepfather's death.

The fact that support was also furnished the child by her natural father is immaterial. A child can be dependent upon more than one person. The statute speaks only of a child who is "dependent" upon the deceased; it does not specify sole dependency as a condition of an award of compensation.

The judgment is affirmed.