631 P.2d 610

**Russell D. TEFFER, Claimant-Appellant,**

v.

**TWIN FALLS SCHOOL DISTRICT NO. 411, Employer,**

**and**

**State Insurance Fund, Surety, Defendants-Respondents.**

**No. 13567.**

Supreme Court of Idaho.

May 11, 1981.

Rehearing Denied Aug. 17, 1981.

James T. Jones of Seeley, Jones & Fuller, Jerome, for claimant-appellant.

Hollis A. Mercer of firm of Paul Boyd, Boise, for respondents.

BAKES, Chief Justice.

This is an appeal from a decision of the Industrial Commission denying appellant Russell Teffer's claim for worker's compensation benefits. The commission held that Teffer's accident did not arise out of and in the course of his employment, as required by I.C. § 72–102(14)(a).

Teffer began employment as a custodian at Twin Falls High School on March 6, 1978. His work shift began at 2:30 p. m. and ended at 11:00 or 11:30 p. m., depending upon the length of lunch break taken. On April 11, 1978, Teffer completed his work before his shift ended. He and other custodians began playing basketball soon after 10:00 p. m. About twenty or twenty-five minutes later, Teffer injured his knee. Prior to that time, Teffer had used the gym facilities on about two occasions.

At the time he was hired, Teffer's supervisor told him that he could use the gym or weight room "after work." The supervisor testified that to him "after work" meant after hours. Teffer testified that he understood it to mean after he had completed his assigned tasks. According to Teffer's supervisor and the district personnel director, school district policy did not permit employees to use gym facilities during working hours.

Whether an accident arose out of and in the course of employment is a question of fact to be resolved by the Industrial Commission under the facts and circumstances of each particular case. *Smith v. University of Idaho,* 67 Idaho 22, 170 P.2d 404 (1946). We are statutorily and constitutionally compelled to defer to the Industrial Commission's findings of fact where supported by substantial and competent evidence. Idaho Const., Art. 5, § 9; I.C. § 72–732. *See, e. g., Sykes v. C. P. Clare & Co.,* 100 Idaho 761, 605 P.2d 939 (1980).

In denying Teffer's claim, the Industrial Commission and its referee cited the following factors in support of its decision: recre-

ational activities were not authorized by the employer during work hours; the right to use gym facilities was not used as inducement for employment or as compensation to the employees; the employer's policy of allowing employees to use the facilities was for the purpose of employee morale; and the employer received no other substantial benefit from such policy.

■ The above findings are amply supported by the record. Accordingly, we affirm the decision of the Industrial Commission. Costs to respondent.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

I cannot agree with the majority that the Industrial Commission was correct in its conclusion that the accident which injured Teffer did not arise out of and in the course of Teffer's employment.

The referee found that "[n]o regular pattern of usage of the gym facilities after working hours by the claimant or other school district employees was established." This finding is contrary to the record. While Teffer personally had used the facilities only two or three times, the unrebutted testimony of Larry Baxter, the personnel director for the school district and a witness for the district, established that employees had permission to, and did in fact, use those facilities on a regular basis. Mr. Baxter testified that:

"[T]he facilities are available to employees prior to or after the normal working shifts. We have many of our certified staff that utilize our gymnasium complex, tracks, etc., prior to starting their work day or after they had completed their work day. This would apply, also, to our classified people that those facilities would be available to them, also, as it is to our certified people that they are available prior to or after their normal work period."

William Ruffell, the maintenance and grounds supervisor for the school where Teffer was employed (and also a witness for the district), testified:

"Q. O.K. To the best of your knowledge, Mr. Ruffell, what did you know about the use of the gym by the night custodians?

"A. I Wasn't aware that they were using it during the working hours, which I figure is eight hours. I knew that they were using it and, I can say, as a custodian when I was out there, I used it on my own time during my lunch hour and after work. As a matter of fact, when I was out there, they done it quite often."

Mr. Ruffell also testified that he gave Teffer specific permission to use the gym facilities after working hours at the time that Teffer was hired. In fact, Teffer passed over an admittedly easier job in order to undertake the custodial duties at the gym because of his desire to take advantage of the availability of the facilities. The district did not introduce any evidence that use of the facilities was sporadic or irregular; to do so would have been contrary to the testimony of the district's own employees. In short, the district never disputed the fact that gym facilities were available to employees after hours and during lunch, and that employees used those facilities, with the district's permission, on a regular basis.

Where the evidence is not in conflict and can produce only one conclusion, a finding that is contrary to that conclusion will be set aside on appeal. *See, e. g.,* I.R.C.P. 52(a); *State v. Master Distributors, Inc.,* 101 Idaho 447, 615 P.2d 116 (1980). As stated in *Colson v. Steele,* 73 Idaho 348, 252 P.2d 1049 (1953):

"Where there is no dispute in the evidence and it is not reasonably susceptible of more than one inference, whether or not an accident to a workman arose out of and in the course of his employment is a conclusion of law rather than a finding of fact and may be reviewed by this court." *Id.* at 351, 252 P.2d at 1050.

Here there were no disputed facts aside from the question of *when* Teffer was allowed to use the gym facilities. The Court is too quick to defer to the findings of the referee, one of which is clearly erroneous.

This factual error becomes important in light of the referee's decision to treat the accident as if it had occurred after working hours.[1] While this was admittedly a fiction, it did form the basis for the referee's, and consequently the Commission's decision.

In light of the fact that gym facilities were used by employees after work both regularly and with the approval of the district, and in light of the referee's election to treat the accident as if it had happened after work, only two questions need be answered. First, does the fact that Teffer had only personally used the gym two or three times make a difference in determining whether the accident arose out of and in the course of his employment? If the answer to that question is negative, then we must ask whether the regular use of such facilities after working hours brings those activities within the scope of the employer's workers compensation liability.

The first question is easily disposed of. The determination to be made in this case is what the scope of employment is, not what any particular employee has or has not done. In deciding whether recreational activities are within the scope of employment, courts universally look at the job and the employer's practices, *not* the individual activities of the claimant. As Larson puts it, the question is when the practice "becomes a fixture of the employment" and "whether

the *activity* has in fact become an incident of the employment . . . ." 1A Larson, Workmen's Compensation § 22.12 at 5–77 (1979) (emphasis added). *See, e. g., Colson v. Steele, supra (practice* of carrying guns was usual and customary). To say that an *individual* employee must engage in a recreational activity a certain number of times prior to being covered by worker's compensation would cause nothing but confusion. Apart from the obvious factual morass which this would create, inconsistent results would follow where there were two identical injuries but one employee had been employed and participated for some time, while the other was newly hired and was engaging in the activity for the first time. I know of no case which focuses the inquiry on how many times the *claimant* has participated in a given recreational activity, and I do not presume that the Court, in upholding the Commission, is relying on the fact that Teffer had personally engaged in this activity only two or three times.

I turn then to the question of whether the fact that employees regularly used the gymnasium facilities after work brings the activities within the scope of the employer's worker's compensation liability. Two general rules of law provide the framework for my analysis. The first is that injuries sustained by an employee on the employer's premises are deemed to arise out of and in the course of employment. *Colson v. Steele, supra.* "[A presumption] that the injury arises out of and in the course of employment prevails where the injury oc-

---

1. Conclusion of Law V was as follows:

   "One factor which makes this case unusual is the misunderstanding between the claimant and the employer as to when he was allowed to use the gym facilities; the claimant believed that he was allowed to use the gym when he had completed his work; but the employer's policy allowed such activity when the claimant's work shift was completed. Thus, in one sense the employer took no action which would bring the claimant's basketball game of April 11, 1978, within the course of employment because such games were not authorized during working hours. *But because the claimant honestly misunder-*

   stood the employer's policy, the Referee concludes that, for the purposes of determining whether the claimant was in the course of his employment, his injury should be treated as if it had occurred during a game played after his work shift. Treating the injury as if it had occurred during a game after the claimant's work shift *has the effect of treating the game as if it were authorized by the employer,* which it was from the claimant's point of view, but it does not expand the scope of activities permitted by the employer; it thus approximates the position that the parties would have been in had there been no misunderstanding." (Emphasis added.)

curs on the employer's premises ...." *Foust v. Birds Eye Division of General Foods Corp.*, 91 Idaho 418, 419, 422 P.2d 616, 617 (1967). The second general rule is that an employee's coverage does not necessarily end with the end of the work day. *See Foust v. Birds Eye Division of General Foods, supra* (employee may recover for injuries received in parking lot after work); *Smith v. University of Idaho*, 67 Idaho 22, 26, 170 P.2d 404, 406–07 (1946), quoting *Lamm v. Silver Falls Timber Co.*, 133 Or. 468, 286 P. 527, 530 (1930) (" 'most of the acts are [not] qualified by the limitation that the injury must have been inflicted during regular working hours.' "); *Burchett v. Anaconda Copper Mining Co.*, 48 Idaho 524, 283 P. 515 (1929) (employee may recover for injuries suffered on boardwalk fifteen minutes after shift ended). In the case of Teffer, the accident occurred on the employer's premises and, as the referee found, shortly after working hours (actually *during* working hours but after the day's work was completed). Accordingly, it must be determined whether the fact that Teffer was engaged in a recreational activity approved by his employer takes this case out of the general rule. A black letter rule governing recreational and social activities is that "[r]ecreational or social activities are within the course of employment when (1) They occur on the premises during a lunch or recreation period as a regular incident of the employment ...." 1A Larson, Workmen's Compensation § 22 (1979). There is no analytical reason for distinguishing recreational activities undertaken immediately after work from those undertaken during a lunch hour, so long as "they occur on the premises as a regular incident of the employment." *See Winter v. Industrial Accident Commission*, 129 Cal.App.2d 174, 276 P.2d 689, 691 (1954) ("[t]here is no material difference between the recreational activities of the caddies on a golf course on a Monday [a day off for caddies], and those of employees who, during lunch time, indulge in play, such as handball and basketball on the premises of the employer"). If the majority is going to make such a radical break from this well settled area of worker's compensation law, it should at least discuss the reasons for its doing so, rather than deferring to the "findings" of the Commission.

Finally, if the referee's fiction that the accident occurred after work is either ignored or assumed away, the district's liability becomes even more certain. The basketball game must then be held to have occurred *during* working hours. As Larson puts it:

"[The majority of courts have] recognized that workmen whose jobs call for vigorous physical activity cannot be expected, during idle periods, to sit with folded hands in an attitude of contemplation. They must do something, and the most natural thing in the world to do is to joke, scuffle, spar, and play with the equipment and apparatus of the plant.

. . . .

"[I]n *Meigel v. General Foods Corporation* [2 A.D.2d 945, 156 N.Y.S.2d 420 (1956)], an injury to the claimant while he and other employees were engaged in a test of strength by trying to bend a steel bar against a post was held compensable. The court stated:

'Young lads whose jobs call for expenditure of physical energy cannot be expected, during slack period, to sit in idleness and gossip. The employer must expect that they will engage in some form of activity. Here it was natural for claimant to attempt to match his strength with his fellow employees and to use the objects found on his employer's plant to do so. The risk was a risk of the employment.'

"On the same reasoning, compensation was awarded for injuries resulting from a ride on a conveyor belt during a lull in the work, from a pole-climbing contest at a remote work site and, in several cases, from fooling around with guns during a slack period." 1A Larson, Workmen's Compensation Law § 23.65 at 5–157 through 5–160 (1979) (footnotes omitted).

Idaho follows the majority rule in this area, or at least has done so until today's decision. *See Smith v. University of Idaho, supra* (employee injured during personal shopping trip into town, off premises but during working hours, entitled to recovery); *Colson v. Steele, supra* (quoting with approval cases holding that injury occurred as the result of horseplay during working hours is compensable).[2]

If this were a close case, I would invoke the proposition that " 'all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction.' " *Smith v. University of Idaho, supra,* 67 Idaho at 26, 170 P.2d at 406. However, this is not a close case. Teffer was engaged in a regularly conducted activity, on the employer's premises, using plant facilities and with the employer's permission, albeit without specific permission to engage in the activity at that particular time. Under these undisputed facts, I would hold as a matter of law that the Commission erred in denying compensation.

I respectfully dissent.

---

**2.** I note that the referee's finding that "the recreational activities were not authorized by the employer during work hours . . .," which finding is cited by the majority, is irrelevant. Horseplay is seldom "authorized," and recreational activities which occur on the premises are generally excluded from coverage only where specifically disapproved of by the employer. *See Employers Liability Assurance Corp. v. Dull,* 416 P.2d 821 (Alaska 1966) (compensation awarded where policeman killed during "fake draw" contest, where employer knew of and "frowned on" such activities, but did not specifically prohibit them).