683 P.2d 874

**Alice D. WOLF, Claimant-Appellant,**

v.

**KAUFMAN & BROAD HOME SYSTEMS, INC., Employer, and Continental Casualty Company, Surety, Defendants-Respondents.**

No. 14455.

Supreme Court of Idaho.

July 6, 1984.

Bruce S. Bistline, Boise, for claimant-appellant.

John W. Barrett and Michael G. McPeek of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from the Industrial Commission's refusal to allow modification of a compensation agreement, which modification was requested by claimant on the grounds of an alleged change in her condition. We affirm in part, reverse in part, and remand for the commission's further consideration in light of this Court's opinion in *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984).

The facts of this case are as follows. Claimant began employment at Kaufman and Broad in March 1976, building overhead cabinets for mobile homes. This was employment covered by and subject to Idaho's Workmen's Compensation Law. In June 1976, she began to experience difficulty with her arms, and in October, she saw Dr. Kendall, who prescribed medication and physical therapy. In November 1976, Dr. Kendall advised claimant to quit work, due to the inflammation and pain in her arms, and she then left employment. As her condition worsened, claimant saw several doctors, who gave differing diagnoses of the problem, such as synovial inflammation and lateral epicondylitis ("tennis elbow"). She underwent various forms of care, including multiple injections, wearing a cast, and physical therapy, but her condition did not improve. She had surgery in July 1977. In January 1978, the surgeon, Dr. Lenzi, gave her a medical release to return to work in a limited capacity with no strenuous lifting or heavy grasping.

Claimant was rehired by Kaufman and Broad in February 1978 as a supervisor trainee with the yard crew. Her duties entailed repair work using the same power tools she had used in her earlier work, and she continued to have pain in her arms.

In April 1978, Dr. Lenzi rated claimant as having permanent partial impairment in each arm, equal to 5% of the loss of each arm at the shoulder. Based on this rating, the surety and claimant, in July 1978, negotiated a compensation agreement, which was then approved by the commission.

In February 1978, claimant quit her job with the yard crew at Kaufman and Broad in order to go to work at Condor Manufacturing Company. She now contends that she was forced to quit, since the work with air tools still bothered her arms. She contends that her decision to accept another job was based on the shorter hours and lesser arm strain in the new job. The commission specifically rejected these contentions of the claimant and found that she left Kaufman and Broad for personal reasons not related to her disability. In so finding, the commission noted that claimant followed her husband-to-be to the new employment, where she was required to use the same tools as at Kaufman and Broad. Her Kaufman and Broad termination slip indicated that she had voluntarily quit.

In March 1979, claimant lost her new employment at Condor Manufacturing because business was slow. Thereafter, she attempted work as a beautician, but that employment aggravated her arm condition and she quit in January 1981. At the time of the hearing, claimant was working as an instructor at a beauty college.

Claimant was again examined by Dr. Lenzi in June 1980. At that time, he revised his rating of her impairment from 5% to 10%, stating that he altered the rating, not because her condition had changed, but because he felt that his original rating was too low. Claimant applied to the commission for a modification of its original award, and a hearing was conducted at which all parties were represented by counsel. The referee entered findings, which were adopted in substantial part by the commission in its order of December 21, 1981 denying modification.

At the outset, claimant argues that the commission erred in finding she left her job at Kaufman and Broad for personal reasons rather than for physical hardship. While that distinction is not critical to the issue of a change of condition, the commission's inference from the evidence, and its finding as to her reason for leaving, were reasonable. The commission is charged with weighing the evidence and judging the credibility of the witnesses, whereas we have only the printed transcript before us. Therefore, we defer to the commission on this factual finding. *See Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982); *Flasche v. Bunker Hill Co.*, 83 Idaho 420, 363 P.2d 1024 (1961). Claimant also argues that the commission erred in finding that Dr. Lenzi's reason for changing the claimant's rating was that the original rating was too low, and she urges that the commission should have found that the worsening condition of the claimant had prompted the doctor's change of rating. Again, we find sufficient evidence to support the commission's finding in this regard.

Claimant next argues that the prepared printed form used by the Idaho State Industrial Commission for compensation agreements is misleading and ambiguous, because the form does not clearly set out the contractual terms to which claimant, by her signature, is agreeing. Specifically, claimant charges that the phraseology utilized in the form, drafted by the commission, interchanges the words "impairment" and "disability" without distinguishing those two terms. "Impairment" and "disability" have, aside from their common connotations, specific statutory legal meanings which inject legal consequences into any worker's compensation contract within which those words appear.[1] In *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984), we stated, regarding the same prepared compensation agreement form as that here involved:

"[T]he Commission failed to discuss the language of Part II, which is the specific part providing the award in dispute here. Part II of the agreement states: 'THE EMPLOYEE HAS BEEN GIVEN A PERMANENT DISABILITY AND/OR IMPAIRMENT RATING OF ....' It is this specific language which causes us to conclude that the compensation agreement is ambiguous. We are unwilling, and it would be improper for us, to presume that 'AND' is the controlling word and that 'OR' should be ignored, or vice versa. Since we are unable to determine the intent of the parties from a reading of the compensation agreement, we find it impossible to discern from the agreement whether the award was for permanent disability or permanent impairment."

In the instant case, the compensation agreement stated that claimant had "A PERMANENT DISABILITY AND/OR IMPAIRMENT OF: 5% of each arm at the shoulder." The commission expressly found that this contractual language "was based solely on the doctor's rating of permanent partial impairment equal to 5% of the loss of the arm at the shoulder in each arm." The commission further found that Dr. Lenzi had not considered non-medical factors in making his rating. Therefore, it is not clear whether non-medical factors were ever computed into the compensation award by the parties. We remand for the commission to ascertain whether the parties who signed the compensation agree-

1. "72–422. Permanent impairment.—'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability."

"72–423. Permanent disability.—'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected."

ment intended that agreement to cover benefits for permanent partial impairment or for disability.

The case is remanded for further proceedings in conformance with *Woodvine, supra,* and our opinion herein. Costs to appellant. No attorneys' fees on appeal.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.