712 P.2d 600

William D. NEUFELD,
Claimant-Appellant,

v.

BROWNING FERRIS
INDUSTRIES, Employer,

and

Ranger Insurance Company,
Defendants-Respondents.

No. 15599.

Supreme Court of Idaho.

Dec. 18, 1985.

Lynn M. Luker of Goicoechea Law Office, Chartered, Boise, for claimant-appellant.

John W. Barrett, Michal G. McPeek of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

DONALDSON, Chief Justice.

Claimant, William Neufeld appeals from an order of the Industrial Commission denying his claim for worker's compensation benefits. Neufeld began working for Browning Ferris Industries (BFI) in June 1978 as a garbage collector. Neufeld alleges that in May or June of 1982, he injured his back in the course of his employment with BFI. He testified that while lifting a heavy steel garbage can he noticed a strain or pull in his lower left hip area. He continued working and did not notify anyone of the alleged accident.

Neufeld testified that he did not notify BFI of his injury because he felt it was only a strained muscle which would heal itself without treatment. He also testified that a memorandum posted on the drivers' board at BFI regarding absenteeism reinforced his "supposition that minor strains and stuff weren't that important to worry about." The memorandum read as follows:

"As you all know, it is vacation season again. Lately, though, we have had a distressingly poor absenteeism record. As of now, we were able to allow two employees off for vacation at one time, but should the absenteeism continue, that may not be possible from the standpoint of keeping the costs at work force in effect. I urge you all to help out, unless you are seriously ill, to attempt coming to work. Minor aches and pains are occasionally a result of our work, unless they are a chronic problem, should be expected."

Neufeld continued to work and perform his usual duties following the alleged accident. He saw Dr. Rae, a chiropractor, on June 11, 1982, complaining of a slight muscle strain in his lower back. He again saw Dr. Rae on August 10, 1982. Dr. Rae testified that Neufeld indicated on that date that he had injured his back lifting garbage cans and that his back had been bothering him for a couple of months. Dr. Rae testified that he did not file a report with the Industrial Commission because Neufeld thought it was only a slight strain which would just go away.

Neufeld testified that his back problems worsened in September of 1982. He saw Dr. Rae on October 20 and again on November 15 and 19. Following the Novem-

ber 19 appointment, he began seeing Dr. Rae approximately twice a week.

Neufeld testified that he first notified BFI's safety manager, Jim Robinson, of his injury in mid-September of 1982. He stated that he told Robinson he had hurt his back in May and that it was still bothering him. He further testified that he spoke to Robinson a second time in November, telling him that he was going to have X-rays, and a third time in December.

Robinson was no longer employed at BFI at the time of the hearing and did not testify. The parties stipulated that Robinson would have testified that Neufeld first notified him of his back problems on December 14, 1982. Robinson wrote a memorandum concerning the December 14 conversation which was placed in Neufeld's personnel file. The memo provided as follows:

"Subject: Bill Neufeld's Back Problem

"Talked to Bill today about his back problem. He indicated he did not know how it had happened, or when it happened. He thought he had done it at home but was not sure. He was filing all claims under company insurance."

On December 9, 1982, Neufeld asked BFI's dispatcher, Joe Petera, for two days off to help relieve his back pain. Neufeld did not inform Petera that his back problems were work-related. At BFI's annual Christmas party, on the evening of December 17, 1982, Neufeld spoke to Petera and to John Weber, BFI's Operations Manager, about his back problem. They testified that Neufeld told them the injury might have occurred at home.

Neufeld's back problems continued to escalate and on January 5, 1983, he took some time off work. At the request of John Weber, Neufeld saw Dr. Daines, an orthopedic surgeon, on January 11. Neufeld gave Dr. Daines a history of his back problems stating that they began in April or May of 1982. He did not give a specific date of accident, but did indicate that his symptoms worsened when he was performing his job duties. Dr. Daines felt that Neufeld probably had a herniated disk and

advised him stop working and to stay in bed.

In the meantime, Neufeld had continued to see Dr. Rae. On February 17, 1983, Dr. Rae referred him to Dr. O'Brien. Dr. O'Brien diagnosed Neufeld as suffering from a herniated disk and sent him to a neurological surgeon. Dr. O'Brien testified that based on the history Neufeld provided him, it was his opinion that Neufeld's injury resulted from lifting garbage cans.

Neufeld underwent surgery on February 21, 1983. He returned to work part-time on April 19, 1983, doing light-duty yard work. Because BFI's company physician and Neufeld's treating physicians agreed that he should not return to garbage collection, he left BFI on May 18, 1983. Dr. O'Brien testified that following surgery Neufeld had a permanent partial impairment rating of 20% of the whole man. Dr. Daines rated Neufeld's impairment at 7.5% of the whole man.

Neufeld turned in an insurance claim on BFI's group health policy seeking coverage for the injury on February 7, 1983. Dr. Rae had previously filed under the same policy to obtain payment for his treatment of Neufeld from June through December of 1982. On the claim, Neufeld indicated that the accident or sickness began in May of 1982, that it was a strained back, and that he did not know when or how it occurred. In answer to the question of whether the injury was due, in any way, to the patient's occupation, he checked "no" and wrote "unknown." He also indicated that he would not be filing for worker's compensation.

Neufeld filed for worker's compensation benefits on February 22, 1983. Hearings were held on October 25, 1983 and on November 9, 1983. The commission ultimately denied Neufeld's claim concluding (1) that he had not suffered a compensable accident within the meaning of the worker's compensation law, and (2) that his claim was barred due to delay of notice. Neufeld then moved for reconsideration. The commission denied the motion stating

that Neufeld had failed to prove that his back injury was the result of an accident as defined by the Idaho Worker's Compensation Law. This appeal followed.

On appeal, Neufeld asserts that the commission erred in finding that he failed to establish a compensable injury. He further asserts that BFI was not prejudiced by his delay in giving notice of his injury, and therefore, that the commission erred in finding that his claim was barred due to the delayed notice. Because we affirm the commission's finding that Neufeld did not establish that he had suffered an accident within the meaning of the worker's compensation law, we find it unnecessary to address the notice issue.

Before reviewing the evidence that the commission relied on in reaching its decision, we note the limited scope of our review. In appeals from the Industrial Commission our review is necessarily limited to determining whether the commission's factual findings are supported by substantial and competent evidence. ID. CONST. art. 5, § 9; I.C. § 72–732; *Wolf v. Kaufman & Broad Home Systems*, 106 Idaho 838, 683 P.2d 874 (1984). The determination of whether a particular injury arose out of and in the course of employment is a question of fact for the commission. *Teffer v. Twin Falls School Dist. No. 411*, 102 Idaho 439, 631 P.2d 610 (1981). Such a determination necessarily involves weighing the evidence and assessing the credibility of the various witnesses, and is therefore committed to the expertise of the commission. The commission's conclusions as to the weight and credibility of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982).

■ With this standard in mind, we review the evidence to determine whether the commission's finding that Neufeld did not establish a compensable injury is supported by the record. A claimant in a worker's compensation case has the burden of proving that he is entitled to benefits. The claimant must prove not only that he was injured, but also that his injury was the result of an accident arising out of and in the course of his employment. His proof must establish a probable not merely a possible connection between cause and effect to support his contention that he suffered an accident. *Dean v. Dravo Corporation*, 95 Idaho 558, 561, 511 P.2d 1334, 1337 (1973).

■ In the instant case, the commission determined that Neufeld had failed to meet this burden. Specifically, the commission found that Neufeld had not established that he suffered an accident within the meaning of the worker's compensation statutes. I.C. § 72–102(14) defines "injury" as a personal injury caused by an accident arising out of and in the course of employment. An "accident" is defined as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72–102(14)(b). Our prior cases, paralleling this definition, indicate that an accident occurs when, in the course of employment, any "unexpected, undesigned, unlooked-for or untoward event or mishap" occurs. *See, e.g., Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 105, 666 P.2d 629, 632 (1983).

■ Neufeld's testimony indicates that he does not know exactly when or where the alleged accident occurred. He testified that sometime in May or June of 1982 he was lifting a steel garbage can and noticed a strain or pull in his lower back. He did not report the incident, and continued his usual work in the months following its occurrence. It is uncontradicted that Neufeld first reported the accident at least three months after it allegedly occurred. Neufeld testified that he reported it in mid-September while Robinson's stipulated testimony indicates that it was not reported until December.

■ Neufeld asserted that he did not report the injury because he felt it was only a pulled muscle which would heal it-

self without medical attention. He contends that his decision not to report the injury was influenced by a company memorandum on absenteeism, the text of which was set out above. However, the memorandum in question addressed only the problem of absenteeism. It contained nothing to suggest that employees should not report on-the-job injuries. In fact, BFI's policy manual specifically provided that all accidents were to be promptly reported and that a failure to report an accident was cause for immediate discharge.

> "Any accident or injury, no matter how minor it may appear, must be reported promptly to your Supervisor. Failure to do so could jeopardize the company's legal position. Because of this, the failure to promptly report an accident or injury is considered one of the most serious offenses against company policy and can result in immediate termination of employment."

Neufeld admitted that he had read the manual several times and that he was familiar with the above-quoted provision.

In addition, the record reflects that Neufeld had filed three previous worker's compensation claims during the course of his employment at BFI. All three of the previous injuries were reported to the employer on the day they occurred.

The record also reflects that Neufeld indicated to three of the supervisory personnel at BFI that his back injury might have occurred at home, rather than in the course of his employment. The memorandum prepared by Jim Robinson following his December 14, 1982, conversation with Neufeld states that Neufeld represented that the injury might have happened at home and that Neufeld was filing for benefits under BFI's group health insurance policy. Neufeld did, in fact, file for health care benefits for the injury pursuant to the policy. He indicated on the claim form that his injury was not caused by an industrial accident and that he would not be filing for worker's compensation.

Based on our review of the record, the evidence, although conflicting, was suffi-cient to support the commission's finding that Neufeld failed to establish that he had suffered a compensable injury. Accordingly, the decision of the Industrial Commission is affirmed.

Costs to respondent.

No attorney fees on appeal.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

Let me preface my dissent by mentioning that it is in the form of a majority opinion which I proposed in April of this year—but which failed to command a majority. Because this is that time of the year when statistics are thought to be important, in order to oblige for an early release I have not taken the time required to rewrite it— and instead have left it intact to stand on its content against the majority. I have commented on the majority opinion by way of inserted footnotes. As will appear to the really interested reader, my display of the facts is less selective than the majority's—which, foremost amongst other frailties, has forgotten the existence of the rule of *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 447, 74 P.2d 171, 175 (1937) which is discussed below.

William Neufeld began work for Browning Ferris Industries (BFI) in June 1978, where he was employed as a garbage collector. Mr. Neufeld claims that in May or June 1982 he felt a pain in his lower left back area when he lifted a large, heavy garbage can in the course of his employment.

Thinking at the time that it was only a slight muscle strain, and aware of a company policy urging employees only to stay home if seriously ill, Mr. Neufeld did not inform anyone of his injury. Unfortunately, Mr. Neufeld's condition worsened. Ultimately, his condition was diagnosed as a herniated disc, and surgery was performed to corrrect the condition on February 21, 1983.

Between the date the injury occurred and the date of surgery, Mr. Neufeld was treat-

ed by three different doctors: Dr. Rae, Mr. Neufeld's treating physician; Dr. Daines, an orthopedic surgeon; and Dr. O'Brien, Mr. Neufeld's treating neurologist. Both Drs. Rae and O'Brien concluded that Mr. Neufeld's injury was work-caused. Dr. Daines did not testify about causation one way or the other.

At a hearing before the Commission,[1] Mr. Neufeld testified that in September 1982 he informed Jim Robinson, BFI's safety officer, of his back problems which he attributed to picking up some heavy garbage cans. Mr. Robinson denies this, and states that the first he knew of Mr. Neufeld's problems was on December 9, 1982.

After surgery, Mr. Neufeld returned to work on April 19, 1983. Mr. Neufeld could not do any heavy lifting, so he performed light duty work until May 18, 1983, when BFI ran out of such work needing to be done. Accordingly, Mr. Neufeld left BFI.

Mr. Neufeld filed a claim for worker's compensation benefits. On April 16, 1984, the Industrial Commission denied Mr. Neufeld's claim. The Commission concluded that (1) Mr. Neufeld had not suffered a compensable accident within the meaning of Idaho's Worker's Compensation Act; and that (2) Mr. Neufeld's claim was barred because he did not notify BFI of his injury within the sixty-day statutory time period of I.C. § 72–701.

## I.

The first issue to be decided is whether Mr. Neufeld has suffered a compensable accident pursuant to Idaho's Worker's Compensation Act. The Commission held that he did not. We disagree.

We begin with the rule that a claimant has the burden of proving a compensable accident. His proof must establish the *"probable,"* not merely possible, cause of his injury, and that the injury-causing accident was work-related. *Callantine v.*

1. Whenever herein reference is made to the three-member Commission, it was actually a

*Blue Ribbon Linen Supply,* 103 Idaho 734, 735, 653 P.2d 455, 456 (1982).

Mr. Neufeld points to the following evidence, in addition to his own testimony, to support his assertion that lifting garbage cans caused his injury:

(1) Dr. O'Brien testified that it was his opinion that Mr. Neufeld herniated his disc as a result of lifting garbage cans, and that "the act of lifting garbage cans for so long [four years] probably contributed significantly to the weakening of the back which finally resulted in the herniation." Deposition of Dr. O'Brien, p. 8–9.

(2) Dr. Rae also testified that it was his opinion that the heavy lifting required of Mr. Neufeld caused his back problems. Deposition of Dr. Rae, pp. 56–57. This testimony was uncontroverted, which must, therefore, be accepted as true. *Pierstorff, supra,* 58 Idaho at 447, 74 P.2d at 175 ("The rule applicable to all witnesses, whether parties or interested in the event of an action, is, that either a board, court, or jury must accept as true the positive, uncontradicted testimony of a credible witness, unless his testimony is inherently improbable or rendered so by facts and circumstances disclosed at the hearing or trial.") *Pierstorff* had been first tried to the Industrial Commission. Since then it also has been applied to factual determinations made by juries and trial courts. *See Dinneen v. Finch,* 100 Idaho 620, 626–27, 603 P.2d 575, 581–82 (1979), where application of the *Pierstorff* rule was critical to this Court's judgment. *Accord In re Estate of Stibor,* 96 Idaho 162, 164, 525 P.2d 357, 359 (1974).

The Commission apparently decided that it was not bound by this uncontroverted testimony. It acknowledged the testimony but "reasoned" around it:

Dr. Daines testified that the Claimant gave him a history of an onset of pain in either April or May of 1982. He did not report a specific accident to the physician.

hearing officer—the Commission's referee.

Dr. Rae, the chiropractor, saw the Claimant on June 11, 1982, and made no entry on the Claimant's patient card or chart at that time. The chiropractor testified that on June 11, 1982, he saw the claimant for back pain. He also testified that when he saw the Claimant on August 10, 1982, at that time the Claimant told him that his back had been bothering him for a couple of months.

The Claimant worked through the summer of 1982 and during that time period went to the chiropractor on two occasions. On the first occasion of his visit to the chiropractor in the summer of 1982, allegedly within a few weeks of the occurrence of the accident, *he made no mention* of such an accident to the chiropractor.

The Claimant had filed three previous workmen's compensation claims while employed at B.F.I. and had received workmen's compensation benefits on several of those claims. The Claimant was aware of his responsibilities in reporting an accident to his Employer, and the *Referee* is not persuaded that the Claimant suffered an accident which arose out of and in the course of his employment in late May or early June, 1982. The *Referee* concludes that the Claimant has failed to meet his burden of proving that his personal injury was caused by an accident within the meaning of the Workmen's Compensation Act. R., p. 25–26 (emphasis added).

Each of the above reasons is either irrelevant or unsubstantiated by the record.

First, the fact that Dr. Daines did not mention the cause of his accident does not mean that it did not occur. Dr. Daines did not evaluate Mr. Neufeld until a long time after the accident occurred and at a time when Mr. Neufeld was in considerable pain (January 11, 1983). Dr. Daines also testified that the best way for determining whether Mr. Neufeld did suffer a specific accident on the job by which he hurt his back would be to check the records of the physician who first saw him. Deposition pp. 26–27. This would be Dr. Rae.

The Commission states that Dr. Rae *made no entry* on Mr. Neufeld's chart with respect to his back injury on June 11, 1982—the first time Mr. Neufeld saw Dr. Rae for his back problems. Again, the *absence of an entry* on that date neither proves or disproves the cause of Mr. Neufeld's back problems. What the Commission chose to ignore, however, is the *uncontradicted* fact that Dr. Rae *did* testify that at the June 11, 1982 visit Mr. Neufeld *did* say that he believed that he hurt his back lifting garbage cans. Dr. Rae also explained *why* Mr. Neufeld at that time did not want to file a claim for worker's compensation benefits:

Q. Would you explain to me why you didn't file any reports with the Industrial Commission about it?

A. It was—he didn't want me to. He said he did not want to—He thought it was a strain, and *he mentioned something about a memo that—that was on a bulletin board or something that was referring to—for minor injuries would be reprimanded or something of that nature. I think he was intimidated is what it was.*

Q. Now, when did he tell you about that memo or whatever?

A. It was a couple of months ago. I can't remember the exact date.

Q. So this is the explanation which he has given you in the past few months as to his reasons?

A. At first I said—*When he first came in and first told me what happened, he said that he—I said, "Do you want to file because you hurt your back lifting garbage cans?"*

*He said, "No, I don't because I think it will just go away. We'll treat it as a"—he didn't feel it was that serious.* (Emphasis added.)

The memo which Neufeld had related to Dr. Rae was the employer's notice to all workers. It read:

To: All drivers

From: Joe Petera

RE: Absenteeism

As you all know, it is vacation season again. Lately, though, we have had a distressingly poor absenteeism record. As of now, we are able to allow two employees off for vacation at one time, but should the absentee situation continue, that may not be possible from the standpoint of keeping a constant work force in effect. I urge you all to help out, *and unless you are seriously ill, to attempt coming to work. Minor aches and pains are occasionally a result of our work, and unless they are a chronic problem, should be expected.* (Emphasis added.) [2]

Thus, the Commission's conclusion that *no mention of the accident was made* at the June 11, 1982 appointment with Dr. Rae was patently in error.

It is evident that the reason Mr. Neufeld declined to file a worker's compensation claim was not that he did not think his back had been injured on the job, but that he thought at that time that the problem was a minor strain which would go away. *Deciding when to file a worker's compensation claim, however, has no relevance at all to determining how and when Mr. Neufeld's back injury occurred. It relates to notice, but it does not prove or disprove causation.*

The Commission further distorts the record by failing to state accurately and completely what occurred between Dr. Rae and Mr. Neufeld at their August 10, 1982 visit. As quoted above, the Commission says Mr. Neufeld merely told Dr. Rae that his back had been bothering him for a couple of months. What the Commission [3] does not mention, however, is that Dr. Rae testified that Mr. Neufeld complained of "sore muscles from lifting the cans." Deposition of Dr. Rae, p. 30. The Commission's selective recitation of the facts implies that not until much later did Mr. Neufeld even assert his back injury as being work-caused. Such is clearly a misunderstanding of the record.

The Commission next states that Mr. Neufeld, having filed three previous worker's compensation claims, was aware of his responsibilities in reporting his accident to BFI. [4] We find this statement to be totally *irrelevant* to the question of *industrial causation.* What Mr. Neufeld has done in the past is of little help in here determining the cause of his back injury. What is relevant is the testimony of Drs. Rae and O'Brien, and Mr. Neufeld, *all of which was uncontroverted,* and which goes toward more than proving the "probable" cause of Mr. Neufeld's back injury, but also establishing unequivocally that such injuries did occur on the job as a result of lifting heavy garbage cans.

BFI's arguments track the Commission's conclusions closely. In addition to what the Commission has said, which we have held to be either irrelevant or clearly erroneous, BFI presents an additional argument that attacks Mr. Neufeld's veracity. BFI argues that Mr. Neufeld at one point in time did tell fellow BFI employees that his back injuries *may* not have been work-related.

Mr. Neufeld did not deny making such statements. What BFI fails to disclose, however, is the reason *why* Mr. Neufeld said what he did: [5]

Q. Mr. Petera [BFI's present safety manager] testified during the awards

---

2. The majority is willing to go so far as to say of this notice that it addressed only the problem of absenteeism. If this caution were given to 100 employees, or 100 army privates, or 100 football players, 99 out of 100 would agree that it is a directive to put up with anything less than major illnesses or aches and pains.

3. And now the majority who commands the opinion for the Court. The majority opinion contentedly fails to treat separately the June 11 and August 10 visits to Dr. Rae, and in that confusion is able to avoid confronting factual reality.

4. The majority blithely adopts this line of reasoning of the Commission but totally fails to explain the relevance of what Mr. Neufeld has done in the past to what *caused* his injury in this case.

5. The majority aparently has chosen to ignore this evidence which obviously stands in the way of its result-oriented opinion.

banquet on December 17, you indicated to him, words to the effect, that your back injury possibly happened at home.

A. Yes, sir.

Q. Do you recall saying that?

A. Something to that effect. I don't recall the conversation completely. I know that my attitude at that time was Jim Robinson [BFI's former safety manager] had already told me that I couldn't run it through Workmen's Comp.

Q. So, why, assuming that you made that statement that it happened at home, why would you have made that if—

A. It was just—I couldn't run it on Workmen's Comp so just leave it at home. I didn't have any reason at that time, I guess, to suppose that it could be run through the insurance company any other way.

Q. Why did you suppose that?

A. If I were to put down, on the insurance form, it happened on the job, it would have been denied totally. If I put down—

Q. Denied by who?

A. The insurance company, Provident Life and Accident. If it was my—done on the job, it would be denied by the Provident Life and Accident. If you mark it that—if I would have marked it that I done it at home, I really wasn't telling the truth. So, I marked it "Unknown." R., Vol. 1, pp. 190–91.

In Wynn v. J.R. Simplot, 105 Idaho 102, 103, 666 P.2d 629, 630 (1983), this Court in a 4–1 decision reversed the Industrial Commission, stating: "The uncontradicted evidence is contrary to the Industrial Commission's finding that claimant's symptoms were not caused by a ruptured disc." Because the Commission made findings inconsistent with and unsubstantiated by uncontroverted evidence, this Court reversed its denial of benefits to the claimant.

We are faced with exactly the same type of problem in this case. The Commission's conclusions are contrary to the uncontroverted testimony. In fact, there is no evidence at all to support the Commission's view that Mr. Neufeld's back injury does not constitute a compensable injury within the parameters of Idaho's Worker's Compensation Law. As this Court stated in *Hadden A & P Tea Co.*, 94 Idaho 861, 864, 499 P.2d 560, 563 (1972), "findings as to the cause, extent and origin of a disability must be supported by at least some professional proof."

The evidence introduced by BFI for the purpose of impeaching Mr. Neufeld falls so wide of the mark as to be not only insubstantial and incompetent evidence, but also to be not amount to impeaching evidence at all. BFI's evidence fails to address the fact that other witnesses—Drs. O'Brien and Rae—substantiated Mr. Neufeld *on all pertinent points*. Further, the fact that Mr. Neufeld was unsure about the cause of his injury, because of its relative lack of severity at first, is evidence in and of itself that, rather than not telling the truth, he has been telling the truth all along. Only a fabricator would from day one dogmatically assert just one cause for an injury, that was in the beginning a minor back strain.

Moreover, whether the injury-producing accident occurred on the *exact date* as believed by Mr. Neufeld is *unnecessary* in determining if it is a compensable injury. As this Court stated in *Wynn, supra:*

[R]espondent on this appeal suggests that under the definition of "accident," it is required "that an injury to be compensable must be caused by an event or mishap which can reasonably be located as to time when and place where it occurred, [and that] conditions resulting from repetitive trauma over a period of time which is not reasonable are not compensable." We disagree. *Wynn, supra,* 105 Idaho at 104, 666 P.2d at 631.

This holding highlights the irrelevancy of the Commission's and BFI's placing emphasis upon Mr. Neufeld's uncertainty as to *when* the accident occurred. What is relevant is the following inquiry:

As this Court has repeatedly stated, "If the claimant be engaged in his ordinary usual work and the strain of such labor becomes sufficient to overcome the

resistance of the claimant's body and causes an injury, the injury is compensable." *Whipple v. Brundage,* 80 Idaho 193, 327 P.2d 383 (1958); *Lewis v. Dept. of Law Enforcement,* 79 Idaho 40, 311 P.2d 976 (1957). *Wynn, supra,* 105 Idaho at 104, 666 P.2d at 631.

It is precisely on this point that Mr. Neufeld prevails. As mentioned, Mr. Neufeld introduced the testimony of two doctors that the repeated trauma of lifting garbage cans would cause the back injury suffered by Mr. Neufeld. *On this point there simply is not one iota of contradictory evidence.* Accordingly, as to the causation of Mr. Neufeld's back injury issue, we reverse the Commission's finding. Its conclusion is not based on substantial and competent evidence.

We are cognizant that our scope of review with respect to issues such as this one is limited to determining whether there is substantial and competent evidence in the record to support the Commission's conclusion. I.C. § 72–732(1). This does not mean, however, that there is no review to be had at all; we refuse to relegate our responsibilities to the mere rubberstamping of whatever the Commission factually decides.[6] Rather, we will do as we have done in this case, which was to is carefully read the entire record and compare it with what the Commission finds as its facts. If credible, relevant evidence—although conflicting—exists to support the Commission, we will pay deference to its conclusions and affirm. If, however, no such evidence exists to support the Commission, we will not hesitate to reverse. *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1984); *Wynn, supra; Laird v. State Highway Dept.,* 80 Idaho 12, 323 P.2d 1079 (1958). Substantial and competent evidence is a difficult term to articulately define. It is, nevertheless, the standard of review we must follow—a standard that *does* require us to review and ascertain the validity of the Commission's findings.

## II.

The second issue to decide is whether the Commission erred in holding that Mr. Neufeld failed to meet his burden of showing that BFI was not prejudiced by his delay in notifying BFI of his injury pursuant to I.C. §§ 72–701 and 72–704. We hold that the Commission did so err.

I.C. § 72–701 requires an employee to notify his employer of any work-related injury within 60 days of its occurrence. Failure to do so bars a claimant from receiving any benefits for such injury. I.C. § 72–704 estalishes an exception to § 72–701. It states, in part, that failure to comply with § 72–701's 60-day rule will not bar an employee's claim if the employee can show that the employer has not been prejudiced by such delay in the giving of notice.

As mentioned above, Mr. Neufeld states that he notified Mr. Robinson—BFI's safety officer at the time pertinent to this issue—of his back injury in September 1982. Mr. Robinson denies this, alleging he was not informed of the injury until December 1982. For purposes of the appeal, the Commission assumed that notice was given in September. To satisfy § 72–701, Mr. Neufeld should have notified BFI in July or August of his injury. Accordingly, the issue is whether the approximate one to two month delay prejudiced BFI.[7] We hold that it did not.

The purpose of § 72–701 "is to give the employer ... timely opportunity to make an investigation of the accident and surrounding circumstances to avoid payment of an unjust claim." *Findley v. Flanigan,* 84 Idaho 473, 373 P.2d 551 (1962). In this case, however, no such action was taken. There is absolutely no evidence of anything

6. The majority's choice of facts and review of the record reveals that it views its responsibility in determining if substantial and competent evidence exists in the record as being merely that of rubberstamping whatever the Commission declares.

7. It is not readily seen that a decision favorable to Mr. Neufeld would be any different had the Commission chosen to believe that Mr. Neufeld did not notify Mr. Robinson until December 1982.

done by Mr. Robinson in September; not until January 1983 was anything done—a full month even after the date Mr. Robinson claims Mr. Neufeld informed him of his injury.

Mr. Neufeld testified that Mr. Robinson seemed unconcerned about his claim, and made no specific inquiries into the cause of the accident and the resulting injury. R., pp. 44–45, 47. Had Mr. Robinson thought Mr. Neufeld was presenting an unjust claim, the record would surely show some effort on his part to investigate the matter more fully—certainly at least something would have been done in December.

The Commission rejected Mr. Neufeld's argument that BFI was not prejudiced because in the time preceding notice Mr. Neufeld received appropriate medical care. The Commission then cited *Kennedy v. Evergreen Logging Co.*, 97 Idaho 270, 543 P.2d 495 (1975), to support its conclusion.

*Kennedy* is inapposite. In *Kennedy*, the claimant underwent surgery without advising his employer. Furthermore, he presented no evidence at all that his surgery was the only adequate medical remedy for his injury. *Id.*, at 272, 543 P.2d at 497. Therefore, *Kennedy* does *not* stand for the proposition that lack of prejudice cannot be shown by *proving* that the claimant received proper medical care. Rather, it stands for the proposition that the mere *assertion* of proper medical care is inadequate as a matter of proof in determining lack of prejudice. The case before us is far different.

A distinction between Neufeld's claim and Kennedy's claim is that Mr. Neufeld did not undergo surgery until much later—some six months—after notifying BFI of his back injury. The only medical care received between the date of his injury and the date of notice was conservative therapeutic treatment. Second, Dr. O'Brien—Mr. Neufeld's treating neurologist—did testify that the treatment Mr. Neufeld received during the time in issue was the appropriate remedy. This testimony was *uncontroverted* and, pursuant to the rule

found in *Pierstorff, supra,* must be accepted as true.

The issue before us is very similar to that found in *Frost v. Idaho Gold Dredging Co.,* 54 Idaho 312, 31 P.2d 270 (1934). In *Frost,* this Court held that since appropriate medical care had been given to the claimant immediately after the accident, despite a lack of timely notice, such delay did not prejudice the employer. *Id.,* at 315, 31 P.2d at 271. There simply is not one iota of evidence that the care given Mr. Neufeld during the time in issue prejudiced BFI in any way. BFI did not present one witness—expert or not—to testify how or why Mr. Neufeld should have been treated any differently than he was. In fact, it was not until January 1983—some *four months* after the Commission assumed BFI was notified and *one month* after BFI claims it was notified—that BFI asked Mr. Neufeld to obtain a second medical opinion, which he did. That opinion, however, did not differ at all with those of Mr. Neufeld's treating physicians with respect to recommending conservative, therapeutic treatment. There simply is no evidence in the record to indicate how or why BFI was prejudiced by the notice delay.

BFI argues extensively that *Dick v. Amalgamated Sugar Co.,* 100 Idaho 742, 605 P.2d 506 (1980), is on point and sustains the Commission's decision. We disagree. *Dick* is like *Kennedy* and bears no resemblance to this case. In *Dick* the claimant argued that the issue in the case was whether the employer "would have been in any better position to investigate the accident and afford medical treatment to [the claimant] if it had received notice on the sixtieth day after the accident rather than the sixty-first." *Id.* at 744, 605 P.2d at 508. We held in *Dick* that such an argument was not persuasive and continue to adhere to that position today. But the issue raised in *Dick* is not the issue before us today— whether lack of prejudice resulting from improper notice can be proved by the introduction of uncontroverted expert medical testimony that the medical care rendered would have been the same even had the

**910**

employer been properly notified.[8] On this issue we hold that such proof overcomes any presumption of prejudice, and that in this case Mr. Neufeld has met his burden of proof.

For the foregoing reasons we reverse the Industrial Commission and remand the case back to it for further proceedings consistent with this opinion. Costs to appellant.

---

**8.** When expert testimony on this issue is controverted, it will be the Commission's responsibility to decide which testimony is more credible. So long as the Commission's determination is then based on substantial and competent evidence, it will be affirmed. *Callantine, supra; Hamby v. Simplot*, 94 Idaho 794, 498 P.2d 1267 (1972).