752 P.2d 612

**Jerry E. BLACKWELL,
Claimant-appellant,**

v.

**OMARK INDUSTRIES, Employer,**

**and**

**Wausau Underwriters Insurance Company, Surety, Defendants-respondents.**

**No. 16786.**

Supreme Court of Idaho.

March 18, 1988.

Clark & Feeney, Lewiston, for claimant-appellant. Paul T. Clark argued.

Lukins & Annis, Coeur d'Alene, for defendants-respondents. Edgar L. Annan argued.

BAKES, Justice.

Appellant Blackwell appeals from a decision of the Industrial Commission denying

his claim for worker's compensation benefits. The Industrial Commission, after conducting a hearing, found that (1) Blackwell failed to prove that he incurred an industrial accident and injury as alleged in his application for hearing; and (2) Blackwell did not give notice of injury to the employer within sixty days as required by I.C. § 72–701, nor did the employer have actual knowledge of any injury to Blackwell. We affirm the commission's decision.

Claimant Blackwell was employed full time by Omark Industries (Omark) from September, 1975, to April 24, 1985. His most recent position was in the primer metal parts department, as a setup worker. Blackwell's duties included a considerable amount of heavy lifting.

Blackwell had a history of prior accidents. On October 30, 1978, while employed at Omark, Blackwell suffered an industrial injury to his lower back. He immediately informed his supervisor, and the appropriate forms were completed within three days. Four years later, in 1982, Blackwell suffered another industrial injury when machine lubrication got in his eyes and on his face. The appropriate forms were completed the next day.

Blackwell testified at the commission hearing that he was aware of Omark's procedures for reporting industrial accidents. It was also shown that Omark employees are encouraged to report industrial accidents (although minor injuries frequently go unreported), but that substantial prizes are awarded to employees with accident-free records.

In addition to the above referenced industrial injuries, Blackwell injured his lower back in September, 1983, in a fall from a horse. This accident resulted in treatment by William Bond, M.D. Dr. Bond testified that, as a result of the fall from the horse, Blackwell experienced pain in the lumbar sacral area and right hip. The symptoms included lower back and hip pain, muscle spasms, and occasional paresthesia. However, even in the month preceding the horse incident Blackwell suffered lower back pain, "especially with lifting at Omark." Blackwell acknowledged having obtained approximately 50 chiropractic treatments to his upper and lower back from April, 1979, through October, 1984.

The instant action stems from an incident allegedly occurring in early 1985. In his testimony before the commission, Blackwell stated that on February 6, 1985, toward midday, his back was injured while loading an 800–pound roll of steel through a press. The pain was on his right side and radiated down into his right leg. Blackwell worked the remainder of that day, and the next day, February 7, 1985, he sought medical care from Dr. Bond.

Dr. Bond personally testified at the hearing. His records show that he examined Blackwell on February 7, 1985, regarding both sinus and lower back complaints. Dr. Bond's medical history included Blackwell's statement "that he had been trying to pry a heavy roll, but during this time is when he sustained an injury to his back and had problems with it since that time." X-rays revealed a narrowed disc at L5–S1. Bond's diagnosis was lumbro sacral strain. Dr. Bond testified, "I feel reasonably certain that the one injury described by him where he was attempting to pry the large roll up was, indeed, a large factor in his problem. Whether it was the instigating factor, I don't know."

On February 11, 1985, Blackwell had a conversation with his immediate supervisor, Harold Hedrick. Blackwell testified that, although he did not request an accident report form, he informed Hedrick of the accident. Hedrick remembers the conversation, but testified it only concerned Blackwell's upcoming termination of employment and return to school, not any alleged February 6, 1985, accident.[1] Consistent with Hedrick's testimony that Blackwell made no mention of any industrial accident, Blackwell did not have his

1. Sometime prior to the conversation, Blackwell had in fact decided to return to school in Portland. Hedrick testified that he reported this conversation about Blackwell quitting and returning to school to his own supervisor, Doug Glenn, the same day, but Glenn did not recall the exchange.

medical expenses billed to the employer's worker's compensation carrier, but rather had his non-industrial group medical insurance billed for the visit to Dr. Bond. He testified before the commission that the reason he did it that way was because he "didn't know how they would do with dividing one [the sinus problem] and the other [the back problem]." Blackwell testified that he personally told Hedrick's supervisor, Doug Glenn, about the accident in the week following February 11. Glenn denied any knowledge of the alleged accident, however, until late April, 1985. Blackwell claims he also told numerous co-workers about the accident. Certain of them testified in his behalf, although none were around when the alleged accident occurred and had no personal knowledge of it, nor were they present when Blackwell had the above referenced conversations with Hedrick and Glenn.

Blackwell terminated his Omark employment on April 24, 1985. Omark regularly conducts exit interviews with terminating employees. During his interview, Blackwell told Carol Schwartz, Omark's personnel manager, he was leaving to go to school in Portland. The interview form clearly states, "Bad back forces him to look for other occupation." Although Blackwell's testimony is contrary, Schwartz testified that Blackwell never told her his back problems were due to an accident on February 6, 1985.

On April 26, 1985, Dr. Bond again examined Blackwell. Blackwell had the same pain as before, but in the "past months pain has become much more severe." Blackwell reported "he hurt it again on Tuesday" (presumably a few days prior to April 26th). Dr. Bond suspected problems with a disc and referred Blackwell to Dr. Donati, a Spokane orthopedist. After a May 8, 1985, visit and a later CT scan, Dr.

Donati found Blackwell had a herniated disc.

Within a week of his termination, Blackwell contacted Glenn, inquiring whether a claim of an on-the-job injury had been reported by Hedrick. Omark claims this is the first it knew that Blackwell was claiming an accident occurred in February, 1985. Glenn checked and found no such report. Accordingly, pursuant to Glenn's instructions, Blackwell finalized an Injury Report Form on May 8, 1985. The date of the accident was reported as "Jan. 28 to 31, 1985." A Notice of Injury and Claim for Benefits form was also prepared which listed the same dates. However, on his Application for Hearing, which Blackwell later filed, the date of accident was listed as February 6, 1985. The discrepancy between the forms, regarding the accident date, was explained by Blackwell in his testimony before the Industrial Commission. Blackwell testified that when he filled out the accident reports he was unsure of the date, but knew it was the day before he went to see Dr. Bond. Once the records of Dr. Bond were obtained he realized that the date of the alleged accident was February 6, 1985.

After a hearing, the Industrial Commission specifically found that Blackwell was not a credible witness regarding the date of the accident or the notifying of his supervisors. It also found that he had sporadic back problems from 1978 to April 24, 1985, which had been triggered by both work and non-work related endeavors. The commission further found that Blackwell had failed to prove a distinct accident and injury on February 6, 1985; that Blackwell had not reported an accident or injury within 60 days of the accident as required by I.C. § 72-701; and that Omark did not have actual knowledge of an injury within the meaning of I.C. § 72-704.[2] Accordingly, the commission further concluded that

2. "72-704. Sufficiency of notice—Knowledge of employer.—A notice given under the provisions of section 72-701 or section 72-448, Idaho Code, shall not be held invalid or insufficient by reason of any inaccuracy in stating the time, place, nature or cause of the injury, or disease, or otherwise, unless it is shown by the employer that he was in fact prejudiced thereby. Want of notice or delay in giving notice shall not be a bar to proceedings under this law if it is shown that the employer, his agent or representative had knowledge of the injury or occupational disease or that the employer has not been prejudiced by such delay or want of notice."

Blackwell's claim was barred by I.C. § 72–701.[3] Blackwell, who died subsequent to the hearing, has appealed through the personal representative of his estate, Jan Blackwell.

This appeal presents two issues: does the record support the Industrial Commission's finding that Blackwell did not incur an industrial accident and injury as claimed; and, did the Industrial Commission err in failing to conclude that the notice of injury Blackwell provided Omark was effective or that Omark was not prejudiced by Blackwell's delay in filing written notice of the injury? If we affirm the commission on the first issue, the second becomes moot. Accordingly, we address the industrial accident and injury issue first.

█ Blackwell contends on appeal that the commission required him to prove that an accident happened at a *particular* time and a *particular* place, rather than merely *"reasonably* located as to time when and place where,"* as provided in I.C. § 72–102(14)(b). He argues that since he did not prove an accident occurred at a particular time, *i.e.,* on February 6, 1985, his claim was denied. Blackwell's counsel at the hearing before this Court stated:

"The problem the Industrial Commission had was one of identifying a specific date that this [the accident] occurred.... This February 6th date, I think, is so important because they could have said at the end of the factual finding that 'the Commission concludes Claimant has failed to prove he suffered a distinct accident and injury as defined by Workmen's Compensation Law,' period, and we wouldn't be here today."

However, a review of the entire record discloses that the Industrial Commission understood that the issue raised before the commission was whether Blackwell had in fact sustained *any* industrial accident, not whether he could prove a particular time and a particular place when the accident had occurred. At the beginning of the commission's hearing, the parties had a discussion with the commission concerning the issues which were before the commission for decision. From a review of that discussion, together with the briefs submitted to the commission, it is clear that the issue was whether or not the claimant had sustained an on-the-job injury at *any* of the various times described in the documents filed by the claimant.[4] As stated in

---

**3.** **"72–701. Notice of injury and claim for compensation for injury—Limitations.**—No proceedings under this law shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable but not later than sixty (60) days after the happening thereof, and unless a claim for compensation with respect thereto shall have been made within one (1) year after the date of the accident or, in the case of death, then within one (1) year after such death, whether or not a claim for compensation has been made by the employee. Such notice and such claim may be made by any person claiming to be entitled to compensation or by someone in his behalf. If payments of compensation have been made voluntarily or if an application requesting a hearing has been filed with the commission, the making of a claim within said period shall not be required."

**"72–702. Form of notice and claim.**—Such notice and such claim shall be in writing; the notice shall contain the name and address of the employee, and shall state in ordinary language the time, place, nature and cause of the injury or disease...."

**4.** The following colloquy occurring at the beginning of the commission's hearing:

"MR. ANNAN [Omark's counsel]: I may have one preliminary matter, Your Honor, regarding what the issues are here today.
"CHAIRMAN: Very well.
"MR. ANNAN: I just discussed with Claimant's counsel the possibility of stipulating that the only issue we have here is whether or not Mr. Blackwell sustained a compensable accident and, if so, whether or not he filed it in a timely manner. Do you agree to that?
"MR. MUSHLITZ [Blackwell's counsel]: The issue being whether or not he sustained an accident while, you say, in a compensable manner, in accordance with the Workmen's Compensation laws; and, that, hopefully, resolve all issues pertaining to notice today?
"MR. ANNAN: Right.
"MR. MUSHLITZ: Okay. Anything further beyond that, I see no need to be resolved today.
"MR. ANNAN. Okay.
"CHAIRMAN: The hearing today will be limited to those issues and if there is anything further, we will set it.
"MR. ANNAN: I would imagine that if Mr. Blackwell could prove that he had an accident and it was filed in a timely manner, proved that there has been no prejudice to the Em-

the defendant's brief submitted to the commission after the hearing:

"By stipulation of counsel at the time of hearing, the only issue in this case is the compensability of the claimant's injury. Did the claimant sustain an on-the-job injury to his back between January 28 and January 31, or February 6, 1985?"

All parties agreed that if an accident did occur, it occurred sometime in the latter part of January or the early part of February, 1985; the real inquiry, then, was whether or not an industrial accident, as defined in I.C. § 72–102(14)(b), had in fact occurred. If anyone would have made a "particular time and place" argument, it would have been the employer; however, Omark did not make that argument. It acknowledged that "between January 28 and January 31, or February 6, 1985," was reasonably enough located. Rather, Omark asserted in its brief that, "It is apparent that the Industrial Commission has no choice but to find that the claimant has not sustained an on-the-job injury in this instance."

A review of the findings, conclusions and order of the Industrial Commission discloses that "a particular date and at a particular place" was not the issue. After discussing the discrepancy between dates entered on Blackwell's filings, the commission stated:

"Claimant testified at hearing he was unsure of the date of the accident when he filled out the accident reports, but knew it was the day before he went to the doctor. Once the records of Dr. Bond were obtained he realized the correct date was February 6, 1985."

The employer did not contest the date Blackwell selected, as the earlier quoted portion of its brief before the commission demonstrates. The issue before the commission was whether or not an industrial accident had indeed occurred at all.

Finally, demonstrating that the commission was focusing on the correct definition of "accident" are the commission's own conclusions of law. In Section I, the commission initiates its discussion thus:

"The Idaho Workmen's Compensation Law defines accident to mean an unexpected, undesigned, and unlooked for mishap or untoward event connected with the industry in which it occurs and which can be *reasonably* located as to time when and place where it occurred causing an injury." (Emphasis added.)

The commission properly understood that I.C. § 72–102(14)(b) only required an accident to be "reasonably located as to time when and place where...."

Blackwell argues on appeal, nevertheless, that the commission was misled by our decision in *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 666 P.2d 629 (1983). Blackwell contends that the commission did not have the benefit of *Hazen v. General Store*, 111 Idaho 972, 729 P.2d 1035 (1986), which was released one month before the commission's determination in the instant action. Whether the commission was fully aware of *Hazen* when deliberating the instant case is not disclosed by the record. Nevertheless, the commission used the correct standard when it acknowledged that an accident need only be "reasonably located as to time when and place where it occurred causing an injury." I.C. § 72–102(14)(b). Although *Wynn* was cited, it was cited only for the proposition that "[a]n accident occurs in doing what the workman habitually does if any unexpected, undesigned and unlooked for or untoward event or mishap connected with or growing out of the employment takes place." *Wynn* was not cited for the proposition that an accident must be proven to have occurred at a particular time and at a particular place.

■ A close reading of the entire record thus demonstrates that the real issue be-

---

ployer if he did not file it in a timely manner, then, any medical issues could be dealt with directly with the Surety. We wouldn't have to have a hearing on those issues.

"CHAIRMAN: Very well. Let the record so show the issues. You may continue."

fore the commission was whether an accident had occurred. The commission found that Blackwell failed to prove he incurred an industrial accident. The commission's findings are supported by substantial competent evidence.[5]

The basic tenet of appellate review is that on appeal the record is to be construed most favorably to the party which prevailed below. *Hazen v. General Store,* 111 Idaho at 972, 729 P.2d at 1035; *Higginson v. Westergard,* 100 Idaho 687, 689, 604 P.2d 51, 53 (1979). The commission found that Blackwell suffered no industrial accident in February of 1985, as he claimed. Although the evidence is conflicting, this Court continues to recognize the Industrial Commission as the arbiter and evaluator of the weight to be given the evidence, *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1983); *Hayes v. Amalgamated Sugar Co.,* 104 Idaho 279, 658 P.2d 950 (1983), and the credibility of witnesses.[6] *Wolf v. Kaufman & Broad Home Systems, Inc.,* 106 Idaho 838, 683 P.2d 874 (1984). There is more than sufficient substantial, competent evidence to sustain the findings of the Industrial Commission. *Hazen v. General Store, supra; Matter of Snyder,* 109 Idaho 167, 706 P.2d 56 (1985).

Our decision affirming the commission's finding that Blackwell did not sustain an accident renders the second issue moot.

Affirmed. Costs to respondents. No attorney fees.

5. Substantial competent evidence supporting the commission's finding can be summarized as follows. First, Blackwell suffered work-related accidents twice in prior years; in both cases, he immediately informed his supervisor and completed the appropriate forms soon after the accident. Blackwell's actions in the instant case do not comport with his prior practice of immediately reporting industrial accidents and filing the necessary written accident reports. Second, Blackwell had prior injuries in the same lumbar sacral area of his back stemming from a September, 1983, fall from a horse. Even in the month preceding the horse incident, Blackwell was having lower back problems. Blackwell admitted receiving approximately 50 chiropractic back treatments between April, 1979, and October, 1984. The record is replete with evidence that Blackwell had chronic back prob-

BISTLINE and HUNTLEY, JJ., and McFADDEN and McQUADE, JJ. Pro Tem., concur.

lems for several years prior to the alleged February 6, 1985, accident. Third, as late as May 9, 1985, Blackwell answered "no" to the query, "Did injury result in disability beyond date of accident?" Finally, Blackwell's supervisors each testified that Blackwell did not inform them of the alleged February 6, 1985, accident until late April, 1985, when he was quitting to go back to school. This was despite Blackwell's knowledge, confirmed by his earlier experience in reporting industrial accidents, that he should immediately inform his supervisors.

6. The commission specifically found: "Claimant was not a credible witness regarding the date of the accident and of the notifying of his supervisor, Doug Glenn and Carol Schwartz of the accident."