766 P.2d 711

Joann Lynn JOHNSON,
Claimant–appellant,

v.

BENNETT LUMBER
COMPANY, Employer,

and

Workmen's Compensation Exchange,
Surety, Defendant–respondents.

No. 16523.

Supreme Court of Idaho.

Sept. 2, 1988.

Rehearing Denied Nov. 7, 1988.

Aherin, Rice & Brown, Lewiston, for claimant-appellant. Darrel W. Aherin argued.

Clements, Brown & McNichols, Lewiston, for defendants-respondents. John R. Stegner argued.

Moffatt, Thomas, Barrett & Blanton, Boise, for amicus curiae. John W. Barrett argued and filed a brief.

BAKES, Justice.

Claimant Johnson appeals from an Industrial Commission order denying her worker's compensation benefits because the commission found that her low back problems were not caused by an accident arising out of and in the course of her employment with Bennett Lumber Company. Because there is substantial competent evidence to sustain the commission's findings, we affirm.

I

Johnson's notice of injury and claim for benefits, filed with the Industrial Commission, alleged that she sustained an industrial accident and injury on February 20, 1985. At the hearing before the commission the evidence disclosed that in September of 1982, claimant Johnson went to work for defendant Bennett Lumber Company at Bennett's Lumber Mill in Elk City, Idaho. Claimant's job entailed cleaning up the mill after it had ceased operations for the day.

Her duties consisted of sweeping up sawdust with brooms and shovels, picking up slabs or boards (weighing up to 100 pounds) that could not be used as lumber, and throwing it all into the floor chains which took the debris to the burner. Claimant and another woman (Kathy Lovell) worked together at the cleanup job.

The record shows that claimant had been enduring mechanical low back pain for some time prior to February 20, 1985, the date of the alleged accident. For instance, beginning March 29, 1982, claimant had received four chiropractic treatments for her back pain and had her low back X-rayed. These treatments were not for injuries received while employed by Bennett Lumber Company. The first treatment preceded her employment with Bennett. Next, approximately the first part of February, 1985, claimant began to experience severe pain in her low back. She had not injured her back while working, and she thought it might be her kidneys because she had experienced kidney problems as a child. Claimant did not work the weekend before February 11, 1985. On Monday, February 11, 1985, claimant had low back pain of such severity that she missed work, and the next day she went to see her local physician, Dr. Franks. She described the pain to him as a "sharp pain like a knife stabbing me in the back." The doctor's diagnosis was low back strain and, on his advice, claimant took the rest of the week off. Claimant asked her husband to advise the plant manager that she would not be able to go to work. He reported to the employer on February 11, 1985, and again on February 13, that claimant's inability to return to work was not related to an on-the-job injury. Further, the medical bills incurred when claimant went to see Dr. Franks were referred to the company handling the medical insurance for the company (MSB), not the worker's compensation carrier.

Claimant continued to suffer from low back pain over the next weekend, but she nevertheless went back to work on Monday, February 18. Claimant worked February 18, 19, and 20, but her co-worker, Kathy, had to do most of the work. On February 21, claimant did not report to work, but went to see Dr. Cleto who admitted her to the local hospital and took X-rays of her back. Because there was no immediate improvement in her condition, claimant was referred to another doctor and admitted to the hospital in Clarkston, Washington, where a CT scan and other tests were performed. The CT scan showed no evidence of a herniated disc, and the hospital records disclose no pain radiating down claimant's legs. Claimant was given several medications, including a local cortisone injection. Although there was evidence of an apparent congenital bony protrusion from the sacrum impinging on the thecal sac, claimant rapidly became virtually asymptomatic. No further intervention was deemed necessary and claimant was discharged with a diagnosis of mechanical low back pain.

On March 7, 1985, claimant requested worker's compensation forms from her employer. When asked why she wished to have worker's compensation forms, claimant replied that the company's medical insurance would not pay for her prescription medicine, but that worker's compensation would. However, she made no statement to her employer at this time that she had suffered an accident and injury on the job. On March 15, 1985, claimant filed a notice of injury and claim for benefits with the Industrial Commission, alleging for the first time that she suffered an industrial accident on February 20, 1985, while working at her cleanup job.

On May 29, 1985, claimant went to Spokane, Washington, to be examined by Dr. Adams. Claimant told Dr. Adams that her problems centered around an injury on February 20, 1985, and that it was her first low back injury. The history claimant provided Dr. Adams was the basis for his testimony that claimant's low back condition resulted from an incident on February 20, 1985. Dr. Adams' ultimate diagnosis was mechanical low back pain, the same diagnosis the Clarkston hospital rendered.

Based on all of the evidence in the record, the commission made its finding of fact that claimant's back condition was not

caused by an accident arising out of and in the course of her employment with Bennett Lumber Company.

## II

The only issue before the Court is whether, construing the record most favorably to the party who prevailed below, the respondent-employer, *Blackwell v. Omark Ind.*, 114 Idaho 10, 752 P.2d 612 (1988), there is any substantial competent evidence to support the commission's factual finding. Idaho Const. art. 5, § 9; I.C. § 72–732(1); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984). As the transcript and exhibits from the Industrial Commission hearing demonstrate, there is ample substantial competent evidence upon which the commission could have based its findings.

Claimant admitted that her low back problem existed well before the date of the alleged accident on February 20, 1985. She had seen a chiropractor for X–rays and treatment for back pain on four earlier dates—two of those dates being in 1983 and the other two dates being in 1982, one even being prior to her employment with Bennett Lumber Company. None of the back problems involved in those four visits were work related.

During the three-week period prior to the alleged February 20, 1985, "accident," claimant's low back problems were so severe that she was under heavy medication and missed one week's work because of the pain. Claimant herself testified that more than one week before the alleged accident on February 20, 1985, Dr. Franks had given her a memo to deliver to her production supervisor, Mr. Wilsey, justifying her being off work because of her low back pain. Claimant testified that it was a common practice when she was ill and could not come to work to have her husband, Lanny, report to Mr. Wilsey and have her excused. Mr. Wilsey testified that during his February 13, 1985, conversation with Lanny, Lanny reported that Johnson's back was hurting, but that it was not job related. Although Lanny testified during the hearing that what he told Mr. Wilsey was that he

did not know what was wrong with Johnson's back, there was conflicting evidence on this point, and questions of conflicting evidence are for the arbiter and weigher of evidence, the Industrial Commission, not for this Court. *Blackwell v. Omark Ind.*, *supra*. The commission is entitled to believe or disbelieve each witness's testimony, depending on its determination of the witness's credibility. Here, the commission obviously lent more credence to Wilsey's testimony than to Lanny's; with this we cannot dispute. The commission's determination of the weight and credibility to be accorded to particular evidence will not be overturned unless it is clearly erroneous. *Houser v. So. Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982), *reh'g denied* 1982.

Supplementing Wilsey's testimony was the testimony of Mr. Kolar, mill manager. Kolar testified that Wilsey had relayed to him Lanny's report that claimant's back problem was not job related. Kolar also testified that claimant had personally told him on March 7, 1985, that she had been off work for a week before the alleged accident because of her back problems, and that she had charged the accompanying medical bills to the employer's medical insurance carrier, not the worker's compensation carrier. The reason claimant gave Kolar for wanting to change her claim from an MSB claim to a worker's compensation claim was not because she was claiming that she had had an accident, but because worker's compensation would pay the prescription bills, and MSB would not. No mention was made that she had been injured in an industrial accident.

The commission's finding of no industrial "accident" on February 20, 1985, is also supported by the testimony of Kathy Lovell. Claimant admitted that the problem existed well before February 20, 1985, having told Dr. Franks on February 12, 1985, that "it felt like there was a knife, a sharp pain like a knife stabbing me in the back." She also described the pain to Kathy Lovell, her co-worker, on February 18, 1985, two days before the alleged accident, "She said that her [claimant's] back hurt and it

felt like there was a knife stabbing her in the back about right here, somewhere in here, lower part." In addition, both claimant and Lovell testified that claimant worked less and less on February 18 and February 19, the days immediately preceding the alleged "accident," and that on February 20th nothing unusual happened to claimant regarding her back.

Finally, while it is true that Dr. Adams, in deposition testimony, stated that claimant's low back pain was from an injury that occurred on February 20, 1985, Dr. Adams admitted that this opinion was based solely on statements which claimant had made to him, rather than on his own evaluation. Furthermore, Dr. Adams' opinion was based on the history the claimant gave him—a history which was inaccurate in that claimant advised him that "this episode is her first low back injury." In her testimony, claimant admitted that she failed to report her prior back treatments to Dr. Adams. The opinion rendered by Dr. Adams was based solely on claimant's inaccurate history which failed to disclose claimant's back problems over the years. Accordingly, the commission was entirely justified in disregarding Dr. Adams' statement that claimant's low back pain was from an injury that occurred on February 20, 1985.

The burden of proof in an industrial accident case is on the claimant.

"A claimant in a worker's compensation case has the burden of proving that he is entitled to benefits. *The claimant must prove not only that he was injured, but also that his injury was the result of an accident arising out of and in the course of his employment.* His proof must establish a probable not merely a possible connection between cause and effect to support his contention that he suffered an accident." *Neufeld v. Browning Ferris Industries,* 109 Idaho 899, 902, 712 P.2d 600, 603 (1985) (emphasis added).

It is suggested on appeal that claimant met her burden by testifying on direct examination as follows:

"Q. [By claimant's counsel] During that first—from February 1st—the first of February up until the morning of the 21st, which you are just talking about, did you hurt your back away from your job during that period of time?
"A. Oh, no."

Claimant cannot meet her burden of proof merely by asserting that she had not hurt her back away from her job during the period from February 1 through February 21, 1985.

I.C. § 72–102(14)(b) defines an "accident" as an "unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." In her testimony before the Industrial Commission, claimant did not testify to any "unexpected, undesigned, and unlooked for mishap, or untoward event," in her work, and she particularly made no mention of a mishap on February 20, 1985, which would support her claim. After describing the daily routine in cleaning the sawmill, claimant's only account of anything unusual happening on February 20, was as follows:

"We were going to start doing in the middle [of the beaver slide] where the edger is and I told Kathy, I said, I'm going to have to take a break, I'm going to have to go down and take a couple more pain pills. So, we went down. We had a few minutes break and then we went back up. By that time I was doing in the middle [of the beaver slide] and I was bending over with my knees the way Dr. Franks showed me how to bend over."

Nor was there any testimony from her co-worker, Kathy Lovell, that any accident had occurred. When specifically asked, "Did you ever remember anything sudden happening to Mrs. Johnson with regard to her back?" Mrs. Lovell stated, "No." She testified that the claimant merely "complained about back pains a lot because it [the work] is hard on your back."

Viewing the record in a light most favorable to the respondent who prevailed be-

low, there is more than ample evidence to support the Industrial Commission's finding that claimant's low back condition "was not caused by an accident arising out of and in the course of her employment with Bennett Lumber Company." *Hazen v. General Store,* 111 Idaho 972, 729 P.2d 1035 (1986), *reh'g denied* 1986; *Neufeld v. Browning Ferris Industries, supra.*

Accordingly, the Industrial Commission's decision is affirmed. Costs to respondents.

SHEPARD, C.J., and JOHNSON, J., concur.

HUNTLEY, Justice, dissenting:

I would join the majority opinion if I could read the record to glean the foundation facts they assert are there. Having read the whole record, and not found those asserted facts to be therein contained, I find the opinion emanating from this Court based on facts "here-manufactured" hard to join. Both the commission and this Court misstate the record, so at bottom one might state that both are in good company.

The commission wrongly states in Finding of Fact VIII:

The Commission finds that Claimant experienced a condition of low back pain as early as March 29, 1982 and *that* condition continued to gradually worsen over a period of time and was not caused by an accident arising out of and in the course of her employment with Bennett Lumber Company. (Emphasis supplied.)

No witness, either for claimant or defense, ever testified that the subject back problem of February, 1985, was either the *same* back problem or a continuation of the earlier back problems.

The *only* testimony is to the contrary, that is that Johnson had *no* back problems for more than a year prior to the condition caused by the heavy lifting and shovelling during the first three weeks of February, 1985, at work at Bennett Lumber.

Despite my having pointed out the commission's misstatement to my brothers, they twice ground their ruling on the same erroneous statement, both in Part I and Part II of their opinion. In Part I:

The record shows that claimant had been *enduring* mechanical low back pain for some time prior to February 20, 1985, the date of the alleged accident. For instance, beginning March 29, 1982, claimant had received four chiropractic treatments for her back pain and had her low back X-rayed. These treatments were not for injuries received while employed by Bennett Lumber Company. (Emphasis supplied.)

In Part II:

Claimant admitted that her low back problem existed *well before* the date of the alleged accident on February 20, 1985. She had seen a chiropractor for X-rays and treatment for back pain on four earlier dates—two of those dates being in 1983 and the other two dates being in 1982, one even being prior to her employment with Bennett Lumber Company. None of the back problems involved in those four visits were work related. (Emphasis supplied.)

As to the first statement above, again there is *no* testimony or even suggestion that the earlier and instant problems were the same or even related.

As to the second statement of the majority, it is totally incorrect to recite that "Claimant admitted that her back problems existed well before the date of the alleged accident on February 20, 1985"—never did she so testify.

Her testimony was that the lifting at work started causing problems during the first three weeks of February; she had a pain like a knife stabbing her in the back about February 12th; and that by February 20th she could tolerate working no longer. I append extracts from her testimony as Appendix A.

The problem with this case may be that the commissioners, counsel, and the majority of this Court are still living in the days before the statute was amended in 1971. Prior to 1971, a claimant had to prove a "sudden accident." The 1971 amendment now makes it necessary only to prove that the accident be "connected with the industry in which it occurs, and which can be

reasonably located as to time when and place where it occurred, causing an injury." This means that if it be shown that the lifting at work over a three-week time period caused the back condition, then it is compensable.

The majority does not dispute my interpretation of the statute but avoids the issue of this appeal by writing many paragraphs on the fact that Johnson did not prove an accident happened *precisely* on February 20th. That was never her contention, so of course she did not prove it.

This kind of error is promoted by the commission's claim form which requires stating a specific date. Unless counsel is wary enough to anticipate the Court or the commission are not understanding of the 1971 amendment to the Code, counsel will invariably write in a single date, setting up the condition for Justice Bakes to write as he did at page 1: "Johnson's notice of injury and claim for benefits, filed with the Industrial Commission, alleged that she sustained an industrial accident and injury on February 20, 1985." Of course she did not prove an accident on that date, nor did she try to, nor was she required to.

The commission should change its form, counsel should be more precise in stating their clients' claims, and this Court should honor the 1971 statutory amendment.

Also, both the commission and counsel should require more precision of witnesses relative to medical testimony. For example, here there was testimony of a 1982 "back" problem and the subject 1985 "back problem." Were they both at L–4, 5, or was one at L–5, S–1? Were they both on the left, right or middle? Were they totally unrelated, making the later one fully compensable, or were they related so as to make only the aggravation compensable? Here again, the majority does Johnson a foul deed because, even if the subject injury were a "continuation of the earlier condition" (of which there is no evidence), would not she be entitled to some compensation for the percent of aggravation?

BISTLINE, J., concurs.

## APPENDIX A

Q. (By Mr. Aherin) Tell the Commission the nature of why you missed work on February 11, 1985.

A. Well, the week before, my back had been starting to get sore. I went through the weekend and I thought, well, it will be okay if I rest up over the weekend, which I did. And Monday morning, it was still sore. In fact, sorer. And I thought maybe—I have had a record of kidney problems when I was little and I thought maybe it would have been a kidney problem. So, I told Lanny to tell them down there at the sawmill I was going to go to the doctor Tuesday and I wouldn't be in on Monday night.

Q. And in relation to the doctor, did you go to a doctor on Tuesday?

A. Yes.

Q. And which doctor did you see?

A. I saw Dr. Franks in Kamiah?

Q. Had you ever seen Dr. Franks before?

A. No. He was new. Dr. Cruz retired and Dr. Franks took his place.

Q. You mentioned the week before your back was hurting. Did you have any injury or something happen away from your work that hurt your back?

A. No.

. . . .

Q. During the month of January, 1985, did you have any problems with your back?

A. No.

Q. What happened that first week, then, of February, 1985, in relation to your back?

A. It just—I would go down there and work and I would get done work and my back would be real sore. I would take some Doans pills and that didn't work. Then, I would try putting heating pad on it and then that Doans rum, put that on it with the heating pad and it just didn't help. I would go to work and it would get a little sorer and aggravate it a little more, I guess.

766 P.2d 717

Q. Then, the following week, you didn't feel you could make it to work?

A. Right.

Q. So, you went to Dr. Franks, I think you said, on Tuesday. Would that have been February 12?

A. February 12, yes.

. . . .

Q. During that first—from February 1st—the first of February up until the morning of the 21st, which you are just talking about, did you hurt your back away from your job during that period of time?

A. On, no.

. . . .

Q. When you saw Dr. Franks on February 12, 1985, did you tell him that it felt to you like you had a knife in your back?

A. I said it felt like there was a knife, a sharp pain like a knife stabbing me in the back.

Q. And this was before the alleged accident of February 20?

A. Yes. This was a week previous to that, the 20th.

Q. Isn't it true that your back was bothering you when you returned to work on February 18?

A. It was like the week of the 4th. I just had a low—it was just a little backache. There was no knife in there no more, just a low, you know, a little ache in my back every time I bent over.

Q. This was on the 18th?

A. Yes.