766 P.2d 1238

STATE of Idaho,
Plaintiff–Respondent–Appellant
on Appeal,

v.

Jeannie A. WILKERSON,
Defendant–Appellant–Respondent
on Appeal.

No. 17593.

Supreme Court of Idaho.

Dec. 30, 1988.

Jim Jones, Atty. Gen., Lynn Thomas, Sol. Gen., Boise, for defendant-appellant-respondent on appeal. Lynn Thomas argued.

Jonne' E. Kohler, Nampa, for plaintiff-respondent-appellant on appeal.

HUNTLEY, Justice.

The Court having granted review of the decision of the Court of Appeals, 114 Idaho 174, 755 P.2d 471, and having considered the briefs and arguments of counsel, determines that the case was correctly decided by the Court of Appeals and, thus, its decision shall remain in effect.

BISTLINE and JOHNSON, JJ., concur.

BAKES, Justice, dissenting:

The Court of Appeals erred both in its analysis of the law applicable to this case, and in its description of the factual scenario surrounding defendant Wilkerson's commission of the crime charged. Accordingly, I would reverse the Court of Appeals and affirm the magistrate's judgment of conviction.

Our cases are legion, and unanimous, that on appeal the record is to be construed most favorably to the party who prevailed below. "When reviewing a jury verdict the evidence adduced at trial must be construed in a light most favorable to the party who prevailed in the jury's verdict." *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 821, 761 P.2d 1169, 1173 (1988). *Accord Blackwell v. Omark Industries*, 114 Idaho 10, 752 P.2d 612 (1988); *Nelson v. Northern Leasing Co.*, 104 Idaho 185, 657 P.2d 482 (1983); *Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982). Here the defendant was convicted by a jury, and the facts therefore must be construed most favorably to support the jury's verdict and findings. The Court of Appeals, by describing the defendant's conduct as "passive disobedience" and "passive resistance," has failed to view the record most favorably to the party who prevailed below.

The record reflects the following. At approximately 11:35 p.m. on the night of September 13, 1985, Canyon County Deputy Sheriff John Taylor was dispatched to the auto accident which spawned this action. Upon arriving at the accident scene, Officer Taylor observed a red Toyota pickup, driven by and belonging to defendant's 22–year–old son, Roger Wilkerson, off in an onion field laying on its side. It had apparently rolled over when it left the road. Paramedics and Officer Taylor checked the pickup and the surrounding area for occupants. Not being able to find anyone in the dark, Officer Taylor began his investigation of the accident by looking for clues, *e.g.*, a driver's license, vehicle registration, etc. He also called for a wrecker.

While Officer Taylor was thus investigating the accident scene, a female (later identified as the defendant) drove up. She was in an "astatic state." She ran to the rolled pickup, mumbled something to the effect that it was her son's pickup, and then turned, ran back to her vehicle and began to drive away. Officer Taylor directed the paramedics to "chase her down." They caught her at an intersection a short distance away. One of the paramedics then returned and told Officer Taylor that the defendant and the other paramedic had gone on to find Roger Wilkerson at a house that was farther down the road.

Upon hearing the paramedic's report, Officer Taylor proceeded to the same house and found, *inter alia*, the paramedic, defendant Jeannie Wilkerson, and her son, Roger Wilkerson. Officer Taylor questioned Roger about the accident until his mother, the defendant, told him not to cooperate any more. Defendant said she was taking Roger to a hospital. Officer Taylor consented, but advised defendant to "keep him [Roger] there until [he] arrived, because basically the investigation is still going."

After advising the Wilkersons that the pickup was being impounded as part of his investigation, Officer Taylor then left the house and returned to the accident scene to complete his investigation there. Soon thereafter defendant Wilkerson also returned to the accident scene and told Officer Taylor not to touch the pickup because it was hers, her attorney was on the way, and she had called her own wrecker. Upon being advised that Officer Taylor already had a wrecker on the way, defendant took Officer Taylor's name and badge number and left.

The wrecker summoned by Officer Taylor arrived, set the pickup back on its wheels, and hooked up to the pickup for towing. In the interim Officer Taylor had marked the scene and was preparing a diagram. At this point defendant Wilkerson again returned, jumped out of her vehicle and ran toward the pickup, yelling at the wrecker operator. She then forcefully interjected herself into the rigging connecting the wrecker to the pickup. Fearing for defendant's safety, both Officer Taylor and the wrecker operator asked her to get out of the rigging. She refused. Officer Taylor then radioed his supervisor for advice. He was instructed to arrest defendant for obstructing an officer in the performance of his duty, particularly his duty to investigate the accident.

Officer Taylor returned to the wrecker and warned defendant that continuing to block removal of the pickup would result in her arrest. She continued her refusal to remove herself from the rigging. Defendant was then placed under arrest. There followed a serious physical struggle to remove Wilkerson from the rigging, resulting in the defendant wrestling Officer Taylor to the ground. After considerable effort on the part of Officer Taylor, and with the assistance of the tow truck operator, defendant Wilkerson was removed from the wrecker's rigging and handcuffed. She then continued to fight Officer Taylor as he led her to the patrol car and, when left alone in the patrol car, continued to obstruct Officer Taylor's investigation of the accident by attempting to forcibly kick out the windows of the patrol car. Officer Taylor then had to return to the patrol car and attempt to "hobble" defendant Wilkerson so that she could not harm herself or the vehicle. Before Officer Taylor could get her hobbled, however, she began to hyperventilate. Relying on his prior training, Officer Taylor treated Wilkerson's hyperventilation by attempting to calm her and by letting her breathe into a paper sack. It was during this treatment for hyperventilation that additional help arrived, including Officer Taylor's supervisor, defendant Wilkerson's attorney, and paramedics. Wilkerson was then turned over to the paramedics and they found her condition to be "fine."

On the basis of this record, which the jury was entitled to believe, the conclusion drawn by the Court of Appeals that such conduct was either "passive disobedience," or "passive resistance" is totally unsupported and in direct conflict with the findings of the jury. As previously noted, our cases require us to view the record "in a light most favorable to the party who prevailed in the jury's verdict," here the State of Idaho. *Ross v. Coleman Co., Inc., supra; Blackwell v. Omark Industries, supra.*

The Court of Appeals also errs in its analysis of the law applicable to this case. Wilkerson was charged with, and convicted of, violating I.C. § 18–705, which provides:

> **"18–705. Resisting and obstructing officers.**—Every person who wilfully resists, delays or *obstructs* any public officer, in the discharge, *or attempt to discharge, of any duty of his office* or who knowingly gives a false report to any peace officer, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year." (Emphasis added.)

One of the duties Deputy Sheriff Taylor was under on the night in question is described in I.C. § 31–2202 which, in pertinent part, reads:

> **"31–2202. Duties of sheriff.**—The sheriff must:
>
> . . . .
>
> "12. Work concurrently and cooperate in his county, with the Idaho state police in the following respects:
>
> . . . .
>
> "(d) Regulate traffic on all highways and roads in the state; *and respond to calls following wrecks and make investigations relative thereto.*" (Emphasis added.)

Thus, Officer Taylor, as a deputy sheriff,[1] had an express duty to make an investigation relative to the wreck he was called to. As evidenced by the citation Officer Taylor issued to Wilkerson, and as re-emphasized in all the judicial proceedings relative thereto, Wilkerson was cited for obstructing Officer Taylor's attempt to discharge his duty of investigating the automobile wreck. During the jury trial in the magistrate's court, Officer Taylor repeatedly testified that all of his actions that night, including ordering the wrecked vehicle towed, were undertaken as part of his investigation of the automobile accident. Although there was conflicting testimony regarding Officer Taylor's motivation in having the wrecked vehicle towed, the jury heard all the testimony and apparently chose to believe Officer Taylor. Determining the credibility of witnesses and the weight to be given their testimony is the jury's exclusive function, and an appellate court should not invade the jury's province. *Harper v. Johannesen*, 84 Idaho 278, 371 P.2d 842 (1962); *Masters v. Dewey*, 109 Idaho 576, 709 P.2d 149 (Ct.App.1985).

Officer Taylor testified as follows:

"Mr. Wasden: Now, what did you do after you arrived at the scene?

. . . .

"Mr. Taylor: At that time upon not finding anyone in the area, I at that time began to basically investigate the accident; just look for any clues, go through the vehicle, see who the occupants were; if I could find a driver's license, a vehicle's registration of that type. And I also at that time called for a wrecker.

"Mr. Wasden: Is it one of your duties to investigate accidents?

"Mr. Taylor: Yes, it is.

"Mr. Wasden: And what does that consist of when you investigate an accident?

"Mr. Taylor: A traffic accident is considered to be a crime scene. It is like any other crime scene. Basically I have the right to seal off that area, investigate that to find out who's at fault if there is any fault involved, to gather any evidence, collect any evidence at the scene, process that scene and make a report of that.

. . . .

"Mr. Wasden: One other question, Officer. Do you routinely investigate accidents?

"Mr. Taylor: Yes, I do. That's basically. . . .

"Mr. Wasden: How many times a week?

"Mr. Taylor: Oh, at least three or four times a week we have accidents in the county that I probably investigate myself, just myself.

"Mr. Wasden: It's a general part of your duties then?

"Mr. Taylor: Yes, it is. It's one of the biggest parts.

. . . .

"Mr. Taylor: Subsequently during talking to the person involved in the accident, who was, I say, the registered owner of the pickup; twenty-two years of age, his mother interjected and stated that she was going to take him to a hospital. I agreed to that. I found out what hospital. I then advised her to keep him there until I arrived, because basically the investigation is still going. . . . .

. . . .

"Mr. Wasden: Okay. So, were you able to question the Wilkerson's . . . or Mr. Wilkerson at the house?

"Mr. Taylor: No, I was not. After his mother advised him not to talk to me he wouldn't answer any questions. I asked him to step outside; he refused. I then left the house and went back. I advised them when they were ready to talk with me, that they could come and get their pickup up at the Sheriff's Office because I was going to impound it. It's the vehicle in the crime, you know, of the accident. I have the right to impound it and take it and hold it until that investigation is complete.

. . . .

---

**1.** The sheriff's duties described in I.C. § 31–2202 are likewise applicable to deputy sheriffs. I.C. § 31–3107.

"Mr. Taylor: Upon the wrecker's arrival I told him to go ahead. After I had marked the scene, told him he could go ahead and set the pickup up on its wheels and go ahead and hook up to it. I went back to my patrol car and was starting on a diagram so that I could go out and do measurements of the accident scene and basically investigate the scene. He was hooking up to it at that time. Mrs. Wilkerson arrived again at the scene. She pulled up behind me in her van, immediately got out, ran towards the truck and was yelling. I put my equipment down, got out of the car, walked up to her, turned my tape recorder on, and that is where the struggle began."

Upon cross examination, Officer Taylor testified further:

"Mr. Hamilton: You didn't impound it in your lot?

"Mr. Taylor: Not in our lot, no.

"Mr. Hamilton: Okay.

"Mr. Taylor: In the wrecker's lot, yes.

"Mr. Hamilton: And that was if you suspected it was involved in the commission of a crime, you ordinarily would impound it in your own lot, is that correct?

"Mr. Taylor: In our own lot, yes.

"Mr. Hamilton: To safeguard it as evidence?

"Mr. Taylor: Yes.

"Mr. Hamilton: But, that never was your intention in this case to protect it as evidence, is that correct?

"Mr. Taylor: It was involved in a crime and I have to protect it, yes, until it's investigated.

"Mr. Hamilton: What crime was it involved in?

"Mr. Taylor: It was involved in a motor vehicle accident, a possibly ... there could have been a possible ... do you want me to go on and continue?"

Finally, on redirect examination Officer Taylor concluded:

"Mr. Wasden: Okay, and what crime did you suspect, if any, that this red Toyota truck was involved in?

"Mr. Taylor: Upon arrival at the scene and observing numerous beer cans and whatnot laying around, I, at that time was looking for a drunk driver."

On the status of this record the jury could have determined that defendant Wilkerson was indeed obstructing Officer Taylor in his attempt to discharge his duty, under I.C. § 31–2202, of investigating the wreck he was called to. The jury apparently did believe Officer Taylor's testimony in this regard, and accordingly found defendant Wilkerson guilty of violating I.C. § 18–705. There is substantial competent evidence upon which the jury could have based its verdict. Accordingly, this Court, the Court of Appeals, and the district court acting in its appellate capacity, are bound by that jury determination. *Ross v. Coleman Co., Inc.,* 114 Idaho 817, 821, 761 P.2d 1169, 1173 (1988) ("If [the jury's findings are supported by substantial competent evidence], then both the trial court and this Court are bound by the jury's verdict."); *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.,* 112 Idaho 722, 735 P.2d 1033 (1987); *Dinneen v. Finch,* 100 Idaho 620, 603 P.2d 575 (1979). On this record, we cannot refind the facts or redetermine guilt. The duty of Officer Taylor to investigate the accident was statutorily established, and the jury found that defendant Wilkerson was obstructing Officer Taylor in his discharge of that duty. On the basis of this record, a violation of I.C. § 18–705 has been shown and the magistrate's judgment of conviction should be affirmed.

The Court of Appeals concluded that Officer Taylor was not carrying out his "duty" because he had not complied with the provisions of I.C. § 49–3608 for the removal of abandoned vehicles, and therefore the defendant Wilkerson did not have to yield to the officer's authority under this Court's decision in *State v. Richardson,* 95 Idaho 446, 511 P.2d 263 (1973). Additionally, the Court of Appeals held that the trial court erred in not giving the defendant Wilkerson's instruction concerning abandoned motor vehicles under I.C. §§ 49–3601 *et seq.* However, the vehicle in question

was a vehicle involved in an accident, not an "abandoned" vehicle, and therefore I.C. §§ 49–3601 *et seq.* were not even applicable. The definition of "to abandon" within the meaning of I.C. § 49–3601(1) is "to leave a motor vehicle on private property without the permission of the person having rights to the possession of the property ... for twenty-four (24) hours or longer." A motor vehicle which is involved in an accident, and which comes to rest either on public or private property, does not fall within the meaning of Title 49, chapter 36, dealing with abandoned vehicles, and an officer may remove such a vehicle from the scene of the accident without first complying with that chapter. Title 49, chapter 36, of the Idaho Code was enacted for an entirely different purpose than the removal of motor vehicles involved in accidents. Accordingly, the trial court did not err in refusing the defendant's requested instruction based upon I.C. §§ 49–3601 *et seq.*

I would reverse the decision of the Court of Appeals and the district court, and reinstate the judgment of conviction of the magistrate.

SHEPARD, C.J., concurs.